# D. J. HARRISON ET AL V. MANVEL OIL COMPANY ET AL

No. 8201.   Decided May 17, 1944.
Rehearing overruled June 21, 1944.
(180 S. W., 2d Series, 909)

*P. C. Matthews* and *Llewellyn & Dugharty*, of Liberty, and *W. E. Loose, John Broughton, John E. Green Jr.* and *Walter C. Clemons*, all of Houston, for petitioners.

Extrinsic evidence was not admissible to change the clear and unambiguous language of the final judgment calling for 13.28 acres awarded to Palmer and wife in the Gulf-Palmer suit to be located along the south line of the Underton survey. Magnolia Pet. Co. v. Jones, 138 Texas 67, 158 S. W. (2d) 548; Booth v. Upshur, 26 Texas 64; Blackwell v. Coleman County, 94 Texas 216, 15 S. W. 530; Blake v. Pure Oil Co., 128 Texas 536, 100 S. W. (2d) 1009.

*Sewell, Taylor, Morris & Connally,* and *C. M. Hightower,* all

of Houston, *T. J. Hightower* and *E. B. Pickett Jr.*, both of Liberty, for respondents.

The entire record of the case may be considered to aid in arriving at the meaning and effect of a judgment, when there is an ambiguity in that judgment. Wagner v. Hogan, 161 S. W. (2d) 849, 851; Lipsitz v. First Natl. Bank, 293 S. W. 563; Gill v. Peterson, 86 S. W. (2d) 629.

MR. JUDGE SMEDLEY of the Commission of Appeals delivered the opinion for the Court.

The suit is by petitioners against respondents for the title and possession of a tract of land containing 1.97 acres in the Charles Underton Survey in Liberty County and on which there is a producing oil well. Judgment of the district court in favor of respondents was affirmed by the Court of Civil Appeals. 179 S. W. (2d) 413.

The question to be decided is whether the land in controversy is or is not within the bounds of a tract of land that was awarded by the Court of Civil Appeals to respondent L. P. Palmer and his wife, Lydia Palmer, by its judgment rendered April 7, 1921, in a prior suit entitled in the trial court L. P. Palmer et al v. Gulf Production Company et al., 230 S. W. 1017. That judgment thus describes the land adjudged by it to Palmer and wife:

"BEGINNING on the South Line of the Chas. Underton survey of 320 acres at a point 279 vrs. North 80 deg. East of the South west corner of same;

"THENCE North 80 deg. East 750 vrs. along the South line of the Chas. Underton survey to stake for corner;

"THENCE North 10 deg. West 100 vrs. to stake for corner;

"THENCE South 80 deg. West 750 vrs. to stake for corner;

"THENCE South 10 deg. East 100 vrs. to the place of beginning."

The record title to the 1.97 acre tract involved herein is in petitioners, unless the tract is within the boundaries of the area awarded to Palmed and wife by the judgment of April 7, 1921, as above described.

The Underton survey was segregated from the public domain June 5, 1841. It is described in its field notes as beginning on the north line of the Jesse Devore league, which was titled in 1835, and its south line runs with the north line of that league.

The trial court, as a part of its elaborate findings of fact, found that the true north line of the Devore league and the south line of the Underton survey is the line referred to in the testimony as Weed's line, which runs from Weed's northeast corner of the Devore league through the Jackson corner. This line is thoroughly identified by the evidence and, while there is testimony that there has been uncertainty as to the location of the north line of the Devore league and the south line of the Underton survey, the evidence in the record, in our opinion, conclusively establishes the correctness of the trial court's finding as to the true location of the line.

■ When the tract of land awarded to Palmer and wife by the judgment of the Court of Civil Appeals in the prior suit is located or constructed according to the description contained in that judgment, unaffected by extrinsic evidence upon which respondents rely, the area in controversy herein lies north and outside of that tract. The description is plain, definite and unambiguous. Stakes are called for as marking three of the corners, but there is no evidence tending to identify the original stakes or the places where they were set. The call for the south line of the Underton survey is, of course, a call for the true line of that survey. Devlin's Real property and Deeds (3d Ed.) Vol. 2, pp. 2003-2004, Sec. 1034. The true location of the south line of the Underton survey and that of its southwest corner having been established by the trial court's finding and by conclusive evidence, and there being no uncertainty and no ambiguity in the description set out in the judgment of the Court of Civil Appeals, the tract adjudged is, under well settled rules, correctly constructed from the southwest corner of the Underton survey and along its south line and according to the courses and distances of that description unless, as respondents contend, a different construction should be given on account of latent ambiguity. Keller v. Hollingsworth, 78 Texas 653, 15 S. W. 110; Davis v. George, 104 Texas 106, 134 S. W. 326.

Respondents do not attack the trial court's finding as to the true location of the south line of the Underton survey, but invoking the doctrine of latent ambiguity they offered in evidence on the trial of this case the pleadings in the prior suit of Palmer and wife v. Gulf Production Company et al., the trial court's judgment, field notes prepared by Compton, a surveyor who testified in that case, part of the testimony of the surveyor and other extrinsic evidence. This evidence was offered, and admitted over objections of petitioners, for the purpose of showing that there was uncertainty as to the true location of the south line of the Underton survey, that the surveyor Compton who testified in

that case located the line approximately 25 varas (28.4 at one point and 21.7 at another) farther north than the Weed line and that the description of the tract awarded to Palmer and wife by the Court of Civil Appeals in that case is to be construed as having reference to the line as surveyed by Compton, and about which he testified in that case, rather than to the true line . The trial court sustained respondents' contention and found from the evidence that there is latent ambiguity in the description of the land in the judgment of the Court of Civil Appeals in the Palmer-Gulf Production Company case, as applied to the location of the tract on the ground, that the south line of the land adjudged in that suit to Palmer is in and along the south line of the Underton survey as located by the Surveyor Compton, and that accordingly the 1.97 acres in controversy herein is within the bounds of Palmer's land as described in that judgment.

■ Latent ambiguity in description is ambiguity, not appearing on the face of the instrument, that arises when the description is applied to the ground or to the subject matter. Generally speaking, it is of two kinds. A familiar example of the one is the case in which inconsistency between a call for a natural object, or the line of another survey, and a call for course and distance is revealed when the field notes are applied to the ground. Thompson v. Langdon, 87 Texas 254, 258, 28 S. W. 931; Wilson v. Giraud, 111 Texas 253, 263, 231 S. W. 1074; Gill v. Peterson, 126 Texas 216, 222-223, 86 S. W. (2d) 629; Humble Oil & Refining Co. v. Ellison, 134 Texas 140, 146, 132 S. W. (2d) 395. An illustration of the second kind of latent ambiguity is the case in which the whole or a part of the description in the written instrument would apply to more than one person or to more thon one tract of land or to more than one line or corner. Hughes v. Sandal, 25 Texas 162, 164; Bond v. Middleton, 137 Texas 550, 556-558, 155 S. W. (2d) 789; Dow v. American Liberty Oil Co., 83 S. W. (2d) 401.

The latent ambiguity which respondents would prove in this case is not of the first, but of the second kind. The evidence offered and admitted develops no inconsistency between parts of the descriptive data in the judgment. It was offered to prove that the words "the south line of the Chas. Underton Survey" appearing in the judgment in the Palmer-Gulf Production Company case would apply either to the south line as surveyed by Compton or to the true south line and that it was intended to apply to the former.

A brief statement about the history of respondents' title,

the two suits in which it has been involved, and the evidence upon which respondents rely is essential to a consideration of the questions as to the admissibility of the evidence and the effect to be given it. On July 22, 1885, J. J. Moor conveyed to L. P. Palmer a tract of land, being a part of the south portion of the Underton survey and a part of the east half of the Devore league, and particularly described as beginning for its southwest corner at a stake marked by bearing trees on the dividing line of the Devore league; thence north 10 west 451 1/3 varas to a corner with a hog haw bearing tree; thence north 80 east to a corner with a pine bearing tree; thence south 10 east, at 100 varas the north boundary line of the Devore league, at 451 1/3 varas a corner having two sweet gum bearing trees; thence south 80 west 750 varas to the beginning. On January 4, 1908, for the purpose of correcting the description in a deed made in 1894, J. J. Moor executed a deed to L. P. Palmer conveying a tract of 5.2 acres of land lying immediately west of the north part of the 60 acre tract described in the deed of July 22, 1885. By a deed dated February 1, 1894, J. J. Moor conveyed to W. S. Swilley all of the Chas. Underton survey except 20 acres theretofore conveyed by him to L. P. Palmer.

Mrs. Mattie Phillips, joined by her husband, sued L. P. Palmer and W. S. Swilley for all of the Underton survey and on June 12, 1913, judgment was rendered in that suit in favor of Mrs. Phillips against Palmer and Swilley for the title to all of the survey except a tract adjudged to Palmer with insufficient description. The judgment of district court was reversed by the Court of Civil Appeals as to Swilley, but was not disturbed as to Palmer. In that case Palmer filed an answer and cross action describing the land that he claimed to own in the Underton survey in the identical language later used by the Court of Civil Appeals in its judgment in the Palmer-Gulf Company case to describe the tract of land that it awarded to Palmer and wife.

The Palmer-Gulf Production Company suit was instituted by Palmer and wife for the purpose of reforming the judgment rendered in Mrs. Phillips' suit against him and Swilley, so that there should be adjudged to Palmer a tract of 20 acres out of the Underton survey, particularly described in Palmer's petition as beginning at the northeast corner of a tract of 69.35 acres surveyed for Palmer by H. O. Compton on June 25, 1918, thence south 11° 25' east, at 36 feet pass the northeast corner of the 60 acre tract conveyed to Palmer by J. J. Moor by deed dated July 22, 1885, continuing in the east line of said 60 acre tract 100 varas to corner on the east line of said tract and on the south boundary line of the Chas. Underton survey; thence west in

said south line to the southwest corner of the Underton survey; thence north in the west line of said survey 308.03 feet to a stake for corner, being the northwest corner of the tract of land conveyed by J. J. Moor to Palmer by deed dated January 4, 1908; thence north 80° 10' east 2829 feet to the beginning. It was alleged that the judgment in the suit by Mrs. Phillips against Palmer and Swilley was an agreed judgment, that according to the agreement the judgment entered should have described the 20 acre tract as described in the petition, but that the tract was by mutual mistake erroneously described. The district court, in the Palmer-Gulf Production Company suit, rendered judgment for Palmer and wife reforming the judgment in the prior suit so as to adjudge to Palmer and wife the title to a 20 acre tract which appears to be the same as that described in their petition in that case, but the description of the tract as set out in the judgment makes no reference to the south line of the Underton survey. On appeal, the Court of Civil Appeals (Gulf Production Company v. Palmer, 230 S. W. 1017) reversed the judgment of the district court and rendered judgment for the appellants, holding that the suit of Palmer and wife to reform the judgment in the prior suit was barred by limitation. In its judgment, however, the Court of Civil Appeals awarded to Palmer and wife the tract of land containing 13.28 acres, which is constructed from the southwest corner of the Underton survey, along the south line of that survey and by course and distance. The description of the tract as appearing in that judgment is copied on the first page of this opinion.

On the trial of this case the court admitted in evidence field notes prepared by H. O. Compton on June 25, 1918, of a tract of 69.35 acres situated partly in the Devore league and partly in the Chas. Underton survey and also admitted a part of Compton's testimony from the statement of facts in the Palmer-Gulf Production Company case. It is shown by Compton's testimony that he made a survey in preparing for the trial of that case and that he included in the tract surveyed the 60 acres and the 5.2 acres that had been conveyed by Moor to Palmer and also another small area immediately north of the 60 acres. The field notes of Compton's survey begin at a point 36 feet north of the original northeast corner of the 60 acre tract and call for the southeast and southwest corners of that tract. From the southwest corner of the 60 acre tract the next two calls are thence north 7° 15' west 1065 to the north line of the Jesse Devoe league; thence south 80° 10' west with the north line of the Devoe league and the south line of the Underton survey 771 feet to a stake for corner.

Compton testified in that case that he located, or undertook to locate, the southeast corner of the Underton survey by beginning at its northeast corner, which he identified by an original marked tree and that he ran thence south 1343 varas to an old marked line running east and west, and that this marked line was 100 varas south of the northeast corner of the 60 acre tract conveyed by Moor to Palmer; that at the northeast corner of the 60 acre tract he found the pine tree described as a bearing tree in the Moor-Palmer deed and that he also identified on the ground the southwest and southeast corners of the 60 acre tract, but found nothing on the ground to identify the northwest corner.

In the part of Compton's testimony given on the trial of the Palmer-Gulf Production Company case that was offered by petitioners on the trial of this case, he testified that he was not saying that he knew where the south line of the Chas. Underton survey was, and that he did not know where it was. It is apparent from his testimony that he assumed the marked line that he found running east and west to be the south line of the Underton survey and the north line of the Devore league, and that he was influenced to do so by the distance from the northeast corner of the Underton survey and by the call in the Moor-Palmer deed for the north line of the Devore league at a point 100 varas south of the northeast corner of the 60 acre tract.

The answers of the several defendants in the Palmer-Gulf Production Company case were offered and admitted on the trial of this case. Gulf Production Company and The Texas Company in their answers disclaimed as to the 13.28 acre tract, 750 by 100 varas in dimensions, to which Palmer had asserted ownership in his answer and cross action in the suit filed by Mrs. Phillips. The defendants Orgain et al. and Butler et al. in their answers alleged their ownship of all of the land lying between the north line of the 69.35 acre tract and the south line of the Underton survey. The opinion of the Court of Civil Appeals in the Palmer-Gulf Production Company case was offered in evidence and admitted, as was also the opinion of the Court of Civil Appeals in the case of Taylor v. Higgins Oil & Fuel Company (2 S. W. (2d) 288) decided in 1928.

Respondent called as a witness R. G. Partlow, a surveyor, who in the year 1940 retraced on the ground the survey of the 69.35 acres made by Compton in the year 1918. He found the lines and corners that were run and identified by Compton and his survey corresponds very closely to that made by Compton. Like Compton, he adopted or used as the south line of the Under-

ton survey and the north line of the Devore league the marked line running east and west that is 1343 varas south of the northeast corner of the Underton survey and 100 varas south of the northeast corner of the 60 acre tract. He testified, however, that he, Compton, and another surveyor, all of the surveyors who testified on the trial, in about the year 1926, of the case of Taylor v. Higgins Oil & Fuel Company above referred to, took the line running between Weed's northeast corner of the Devore league and the Jackson corner to be the north line of the Devore league. Partlow testified that, besides knowing of the location on the ground of the line that he surveyed as the south line of the Underton survey and the north line of the Devore league, and knowing of the line running from Weed's northeast corner of the Devore, which was farther south than the line through the Jack-there was a claim of another line for the north line of the Devore, which was farther south than the line through the Jackson corner.

Respondents rely primarily upon the testimony of Compton, taken from the statement of facts in the Palmer v. Gulf Production Company case and explained by the testimony of Partlow give in this case, to prove that the Court of Civil Appeals intended by its judgment in that case to award to Palmer and wife a tract of 13.28 acres having for its south line the line of the Underton survey as described in Compton's field notes and testimony instead of the true line. There is at least serious question as to the admissibility of that testimony. Neither the judgment of the Court of Civil Appeals nor the pleadings in that case disclose that any other line than the true south line of the Underton survey was intended to be designated as the south line of the Palmer 13.28 acre tract. The petition filed by Palmer and wife contains calls for distances between corners to the north and the south line of the Underton survey, but it does not even raise doubt as to the location of that line, in the absence of evidence as to distance on the ground.

■ Permian Oil Company v. Smith, 129 Texas 413, 446, 73 S. W. (2d) 490, 107 S. W. (2d) 564, 111 A. L. R. 1152, involved the title to a section, 103, and the question presented for decision was whether the title to that section had been adjudged in a prior suit to be in T. F. Hickox. The petition in the prior suit brought by John Monroe against T. F. Hickox was in statutory form of trespass to try title, describing sections 103 and 104 as the land for which the suit was brought. The answer was a plea of not guilty, and the judgment rendered was that the plaintiff take nothing. The plaintiff in the second suit, holding under Hickox, asserted that it had title to section 103 by virtue of the take nothing judgment in the prior suit. The defendants contended

that title to section 103 was not determined by the former judgment, because it was shown by the court's findings of fact and conclusions of law in that case that the plaintiff Monroe was the legal owner and holder of the fee simple title to section 103, but that recovery was denied to him only on account of his having failed to prove the location on the ground of the land for which he sued, that is that his sections were not in conflict with senior surveys, it thus appearing that the issue in fact determined in the prior suit was one of boundary only and not of title. The court sustained the plaintiff's contention, holding that the take nothing judgment was in its legal effect an adjudication of title in the defendant, was unambiguous and could not be contradicted or interpreted by the trial court's findings. It seems to follow from that decision that the legal effect of the unambiguous description of the land awarded to Palmer and wife by the judgment of the Court of Civil Appeals in the Palmer-Gulf Production Company case should not be subject to contradiction, explanation or interpretation by resort to testimony in the statement of facts in that case or to other extrinsic evidence.

■ Practical consideration supports the conclusion that an unambiguous description in a judgment affecting land should not be open to contradiction or interpretation by examination of the evidence admitted at the trial. Final judgment is intended to be the end of the controversy and trial. Final judgment in a suit affecting land becomes a muniment of title; and a subsequent purchaser of the land should be permitted to look to and rely upon the unambiguous description of the land contained in the court's judgment, and should not be required to examine the evidence that was heard and considered by the court in the rendition of its jugment. Otherwise, a final adjudication would become the starting point for new litigation, for re-examination and for second decision of the question decided in the former suit. Black on Judgments (2d Ed.) Vol. 1, pp. 364-366, Sec. 245. The controlling intention of the court's jugment is that expressed on the face of the judgment and not an intention that may be deduced from evidence that the court had before it. Blackwell v. Coleman County, 94 Texas 216, 220, 59 S. W. 530.

■ We are inclined also to believe that this is not a case for the application of the doctrine of latent ambiguity. There is no proof that there is, or was, when the Palmer-Gulf Production Company case was tried, a certain definitely established or recognized line for the south line of the Underton survey other than the true line, to which the words "the south line of the Chas. Underton survey" appearing in the judgment may be applied. The call for the line of the survey without other words of description

or definition is, as we have said, a call for the true line. There can be but one true line. However, had the proof shown that there was a line other than the true line that was marked, used and generally regarded as the south line of the survey, then it might be said that there were two lines, to either of which the description in the judgment might refer, and the latent ambiguity doctrine might be applied. But there is no such proof. While Compton's testimony shows that he found a marked line that he used or adopted as the south line of the Underton survey when he made the survey of the 69.35 acre tract for Palmer, he testified also that he did not know where the south line of the Underton survey was, and there is no evidence that the marked line found and adopted by Compton was generally used or reputed to be the south line of the Underton survey. To the contrary, respondents' witness Partlow testified that from 1919 until 1925 or 1926, and he did not know how long before that, the Jackson corner (which is on what the trial court found to be the true south line of the Underton survey) was recognized as being on the north line of the Devore league and as marking the northwest corner of the east one-half and the northeast corner of the west one-half of that league. He testified further that both he and Compton, as witnesses in the trial of the case of Taylor v. Higgins Oil & Fuel Company, which was tried about the year 1926, took the line running from Weed's northeast corner of the Devore league through the Jackson corner to be the north line of the league. The location given the south line of the Underton survey in the testimony of Compton and in the testimony of Partlow represents the surveyor's construction of the line or his belief as to its location. It is not evidence that there was at that location a line marked, used, and established as the south line of the survey.

The view here expressed does not conflict with Bond v. Middleton, 137 Texas 550, 155 S. W. (2d) 789. In that case the description to which the latent ambiguity rule was applied was not a call for a line or a corner of a survey, but it was a call in a deed describing the land conveyed as beginning "at a point 49 varas south of the Wm. J. Rodden northwest corner and running thence south with Rodden's west line." Mrs. Middleton contended, and offered evidence to prove, that the true location of the west line of the tract of land owned by Wm. J. Rodden was along a line extended north from the northwest corner of a tract of land to its south. There was evidence that the land actually possesed and used by Rodden was for many years marked and defined along its west by a fence and by an old well marked line and that he and the adjoining land owner had for years recognized and claimed that line as the boundary

line between their lands. On account of that evidence it was held that the call for Rodden's west line might be applied either to the fenced and established line then used as the boundary between Rodden's land and that of the adjoining land owner or to a line constructed by extending a line north from a corner of a tract to the south of Rodden's land.

■ But when we treat the evidence, admitted over petitioner's objections, as admissible and give careful consideration to all of the evidence, we reach the conclusion that the evidence is, as a matter of law, insufficient to prove that the south line of the Underton survey as located by Compton was accepted and regarded by the Court of Civil Appeals in the Palmer-Gulf Production Company case as the south line of the Underton survey, and fails to prove that the court intended by its judgment to adjudge to Palmer and wife the ownership of a tract of 13.28 acres constructed from that line.

The Court of Civil Appeals in that case had before it the pleadings, the judgment of the district court and the evidence contained in the statement of facts, including the testimony of Compton, part of which was offered in evidence on the trial of this case. The pleadings of the parties called for the south line of the Underton survey, but gave no further description of the line, except that in the plaintiff's petition distances were given to the line from corners north of it. The suit was brought by Palmer and wife to reform the judgment rendered in the prior suit by Mrs. Phillips against Palmer and Swilley so that there would be adjudged to Palmer and wife 20 acres out of the Underton survey, described in the petition as beginning at the northeast corner of the 69.35 acre tract; thence south 11° 25' east 313.77 feet to the south line of the Chas. Underton survey; thence west with said south line to the southwest corner of the Underton survey; thence north 308.3 feet; thence north 80° 10' east 2,829 feet to the beginning. There is a passing call for the northeast corner of the 60 acre tract at 36 feet from the beginning corner. It is evident from the record made in this case that the purpose of the plaintiffs was to reform the former judgment and to recover 20 acres off the north end of the 69.35 acre tract, and that the plaintiffs Palmer and wife and the surveyor Compton believed or described the south line of the Underton survey to be 100 feet south of the northeast corner of the 60 acre tract.

The trial court in that case rendered judgment for plaintiff and wife reforming the judgment in the prior suit and adjudging to them the title and possession of a 20 acre tract described by metes and bounds. This description, however, while substantially the same as that contained in the plaintiff's petition in the case,

omits all calls for the south line of the Underton survey and ties the tract to the northeast corner of the 69.35 acre tract and to the northeast corner of the 60 acre tract. The omission of the calls for the south line of the Underton survey is significant. The trial court in that case did not accept Compton's location of the south line of the Underton survey. Had it done so, its judgment would have described the 20 acre tract in the language contained in the petition, calling for its south line to be in and along the south line of the Underton survey. The court had before it Compton's testimony that he did not know where the south line of the Underton survey was.

The judgment of the Court of Civil Appeals in the Palmer-Gulf Production Company case reverses that of the trial court and denies to Palmer and wife reformation of the judgment rendered in the suit brought by Mrs. Phillips. It then renders judgment in favor of Palmer and wife against the defendants for the title and possession of 13.28 acres described by courses and distances from the southwest corner and south line of the Underton survey, with no calls for corners of the 69.35 acre tract or for corners of the 60 acre tract. This description of the 13.28 acres is in the identical language used by Palmer to describe in his answer in the suit by Mrs. Phillips the land that he claimed in the Underton survey and is in the identical language of The Texas Company's disclaimer in the Palmer-Gulf Production Company suit. The judgment of the Court of Civil Appeals then proceeds to render judgment in favor of the defendants against Palmer and wife for the title and possession of a tract particularly described by metes and bounds and being all of the land lying between the northeast and northwest corners of the 69.35 acre tract on the north, calling for and describing those corners, and the south line of the Underton survey on the south, calling for that line, but giving no further description of it. In this description there are no calls for distances between the corners to the north and the south line of the Underton survey. The description is the same as that contained in the answers and cross actions of the defendants Orgain et al. and Butler et al. There is expected from the tract thus adjudged to the defendants the 13.28 acres awarded to Palmer and wife.

Thus the Court of Civil Appeals in the Palmer-Gulf Production Company case rendered final judgment as to the title to all of the land lying between the northeast and the northwest corners of the 69.35 acre tract on the north and the south line of the Underton survey on the south, adjudging all of the land to the defendants, except the 13.28 acre tract constructed from the south line of the Underton survey, which it awarded to Palmer

and wife. All of the area to which the judgment relates was not included in the description contained in the petition filed by Palmer and wife, when that description is construed in connection with the testimony of Compton and Partlow, but the entire area and the title to it were brought into the suit by the answers and cross actions of the defendants, particularly the defendants Orgain et al. and Butler et al.

It is apparent, in our opinion, from the foregoing statement of the pleadings and judgments in the Palmer-Gulf Production Company case that the Court of Civil Appeals did not intend by its judgment to accept or adopt Compton's construction of the location of the south line of the Underton survey and that it did not intend to adjudge to Palmer and wife a tract of land constructed, like that described in the trial court's judgment, by connections to corners of the 69.35 acre tract and the northeast corner of the 60 acre tract. The Court of Civil Appeals denied to Palmer and wife the relief that the trial court had granted and adjudged to them a tract distinctly different in description. The description of Palmer's land in the final judgment, that of the Court of Civil Appeals, contains no calls for connection to corners of the 69.35 acre tract or to corners of the 60 acre tract, and no call for a south line of the Underton survey at a distance of 100 varas from the northeast corner of the 60 acres. The description was taken eitther from the answers filed by Palmer in Mrs. Phillip's suit or from the disclaimer filed by The Texas Company in the Palmer-Gulf Production Company suit. The Court of Civil Appeals intended by the calls for the southwest corner and the south line of the Underton survey to describe a tract of 13.28 acres connected to the true southwest corner and located on and along the true south line of that survey, wherever that corner and that line in fact were.

If the Court of Civil Appeals had construed the pleadings as involving land extending no farther south than 313.77 feet on its east line and 308.3 on its west line from the northeast and northwest corners of the 69.35 acre tract, these distances would have been set out in the description of the land adjudged to the defendants and would not have been omitted from it. If the court had intended to award to Palmer and wife 13.28 acres off the north end of the 60 acre tract the 13.28 acres would have been described in the judgment by connections to corners of that tract. If the court's intention had been to adjudge to them a tract of 13.28 acres constructed from the south line of the Underton survey as located by Compton, the judgment would have contained some reference to identify Compton's line, as, for example, the call of 100 varas south from the northeast corner

of the 60 acre tract, and would not have designated the line merely as the line of survey.

■ Respondents' brief contains a carefully prepared and persuasive argument to show by statements taken from the opinion of the Court of Civil Appeals in the Palmer-Gulf Production Company case that the court understood and interpreted the record before it as relating only to a tract of 20 acres as surveyed by Compton, that is, a tract off the north end of the 69.35 acres and having for its south line the south line of the Underton survey located as described in Compton's testimony. The opinion does contain statements subject to that construction. They are not made, however, to reflect the court's decision as to the location of the south line of the Underton survey and they do not undertake to define particularly the location and bounds of the land involved in the suit. They appear in the part of the opinion which explains in general terms the nature of the case. In our opinion they neither control nor qualify the particular and express adjudication made in unambiguous language in the court's judgment. Magnolia Petroleum Co. v. Caswell (Com. App.) 1 S. W. (2d) 597; 34 C. J. pp. 501-503, Sec. 794, 795, Note 17.

The statement contained in the opinion of the Court of Civil Appeals in the Palmer-Gulf Production Company case, repeated in the trial court's findings and in the opinion of the Court of Civil Appeals in this case, that appelants disclaimed as to the 13.28 acres of land conveyed to Palmer by Moor by deed dated July 22, 1885, is inaccurate. The 60 acres conveyed by that deed is in part in the Devore league and in part in the Underton survey. The area conveyed by the deed includes 16.67 acres, instead of 13.28 acres, in the Underton survey between Partlow's north line of the 60 acres on the north and the Weed line (found by the trial court to be the south line of the Underton survey and the north line of the Devore league) on the south. Neither the appellants, Orgain et al. nor the appellants, Butler et al. in the Palmer-Gulf Production Company case filed disclaimer. By separate cross actions they alleged their ownership of all of the land lying between the north line of the 69.35 acre tract on the north and the south line of the Underton survey on the south. The Texas Company did file a disclaimer alleging that it had no right, title or interest in a tract defined by metes and bounds in the very language that was used by the Court of Civil Appeals in its judgment, which tract, as we have held, is constructed by courses and distances from the true south line of the Underton survey and includes none of the land in controversy herein.

Gulf Production Company's answer in that case alleges that Palmer, by his answer and plea in reconvention in cause No. 3813 (Mrs. Phillip's suit) claimed title to a tract which it describes by metes and bounds in the exact language of The Texas Company's dsclaimer, except that there are added to the description a pine tree marked "X" bearing north 80 degrees east 10 varas from the northeast corner and a hog haw tree marked "X" bearing north 27½ west 2 varas from the northwest corner; and in another paragraph Gulf Production Company diclaims as to the land "above described by specific metes and bounds and as described in plaintiff Palmer's plea in reconvention in said Cause No. 3813." This description of bearing trees is the same as the description in the Moor-Palmer deed of bearing trees at the northeast and northwest corners of the land conveyed by that deed. However, no bearing trees are called for or described in Palmer's answer in said Cause No. 3813.

If the disclaimer of Gulf Production Company in that case intends to describe the same trees as those called for in the Moor-Palmer deed conveying the 60 acre tract, ambiguity is developed by the evidence in this case between the calls in that pleading for the trees and the calls for courses and distances from the south line of the Underton survey. The construction and legal effect of the disclaimer were matters for decision in the case in which the disclaimer was filed; and the Court of Civil Appeals, in rendering judgment in favor of Gulf Production Company and the other appellants in that suit for the title and possession of land lying south of the north line of the 60 acre tract, necessarily construed the disclaimer as intended to apply only to the tract of land that it adjudged to Palmer and wife. Taylor v. Higgins Oil & Fuel Co., 2 S. W. (2d) 288, 295.

That disclaimer, the description in plaintiff's third amended petition in this case and certain of the facts in evidence herein, taken together, may constitute a representation by Gulf Oil Corporation and possibly other petitioners, that the south line of the 1.97 acre tract described in the petition in this suit is the boundary line between Palmer's land and petitioners' land, which might serve as the basis for estoppel against those who made the representation. That question, however, we do not decide because it does not relate to the land involved in this suit.

■ We have carefully examined the evidence relied upon by respondents to estop petitioners from claiming that the boundary line between respondents' land and petitioners' land is located farther south than the north line of the 1.97 acre tract in controversy herein. We omit a discussion of the evidence, because of the

length of this opinion and because there is no proof whatever of one of the essential elements of estoppel. While the trial court based its judgment in favor of respondents in part upon estoppel, it made no finding that respondents, or any of them, were misled, to their injury, by any act or representation of petitioners. Title cannot be divested by mere acquiescence, nor does mere inaction raise an estoppel. "Only where conduct or statements are calculated to mislead a party, and are acted upon by him in good faith, to his prejudice, can he invoke them as a basis of such an estoppel." Oklahoma v. Texas, 268 U. S. 252, 257, 45 Sup. Ct. 497, 69 L. Ed. 937, 943; Hunter v. Malone, 49 Texas Civ. App. 116, 108 S. W. 709; Tucker v. Smith, 68 Texas 473, 482, 3 S. W. 671; Koenigheim v. Sherwood 79 Texas 508, 512, 16 S. W. 23; Great Plains Oil & Gas Company v. Foundation Oil Co., 137 Texas 324, 335-336, 153 S. W. (2nd) 452.

We find no evidence in the record tending to prove any acts or representations by petitioners, or any of them, calculated to mislead respondents as to the location of the boundary line between their lands, and no evidence that respondents relied to their injury upon any such acts or representations of petitioners.

The judgments of the district court and the Court of Civil Appeals in favor of respondents and against petitioners are reversed, and judgment is here rendered for petitioners against respondents for the title and possession of the tract of land described in the judgment of the district court, and that respondents take nothing by their cross actions against petitioners. This judgment is without prejudice to petitioners' suit for damages, which, as the record shows, was dismissed in district court without prejudice. The judgment of district court in favor of petitioners against defendant Manvel Oil Company on its disclaimer, and the district court's judgment of dismissal as to A. T. Feagin's suit and as to certain defendants named therein are not affected by this judgment.

Opinion adopted by the Supreme Court May 17, 1944.

Rehearing overruled June 21, 1944.