McCURDY et al. v. PHILLIPS
PETROLEUM CO. et al.

No. 4546.

Court of Civil Appeals of Texas. El Paso.
March 18, 1948.

Rehearing Denied April 14, 1948.

Black & Stayton, of Austin, Wm. Pannill and E. G. Aycock, both of Fort Worth, Hart Johnson, of Fort Stockton, for appellants.

E. H. Foster, Robert B. Burgess, and Underwood, Wilson, Sutton, Heare & Boyce, all of Amarillo, and Travers Crumpton, of Fort Stockton, for appellees.

SUTTON, Justice.

This is a boundary suit and the appeal comes from the 83rd District Court of Pecos County. The suit involves the location on the ground of a 40-acre tract described as the Southeast one-fourth (SE¼) of the Northeast one-fourth (NE¼) of Section 24 in Block 194 G. C. & S. F. Ry. Co. in Pecos County and a 20-acre tract described as the East one-half (E½) of the Southwest one-fourth (SW¼) of the Northeast one-fourth (NE¼) of said Section and the common line between the two tracts.

Phillips Petroleum Company sued E. J. McCurdy, Jr., and other named defendants to recover the oil and gas leasehold as a claimed part of the first described tract, the last tract above mentioned, together with five oil wells located thereon and the value of certain of the oil produced from said wells. A trial was had to the Court and a jury, but at the conclusion of the testimony each party filed a motion for an instructed verdict. Plaintiff's motion was sustained and a verdict directed in its favor and judgment followed

accordingly, from which this appeal is prosecuted.

Among other things the defendants assign as error the failure of the Court to instruct in their favor and because of the instruction in favor of the plaintiff, and in the alternative the failure to submit the case to the jury. There is presented here the opportunity to make some nice distinctions, but to do so would add nothing to the decision of the case, nor alter its simple, basic facts. We have reached the conclusion the first point of error must be sustained.

It was stated on oral argument there is no dispute about the facts and that is fully borne out by the record. The differences arise on the application of the facts. The question presented is, shall the two tracts remain under the facts in the position from which the five wells in controversy, and the wells belonging to the plaintiff east thereof, were located, or shall the position be shifted west in accordance with what has become known as the Turner method of location and thereby include the 20-acre tract above mentioned and the five wells thereon within the first tract? Plaintiff contends for the latter and defendants for the former location.

H. P. Nichols is the common source of title. On December 14, 1927, Nichols owned the oil and gas lease on the tracts above described. On that date he assigned the lease on the 20-acre tract to E. R. Cosby, defendants' predecessor in title, and on March 15, 1928, Nichols assigned the 40-acre tract to John W. McGee. On the same date McGee assigned to the Matador Oil Corporation of which he was president, which concern in turn assigned to the plaintiff on May 9, 1929.

Block 194 was an office survey and no ground locations were originally made. Commencing in 1916, Capt. R. S. Dod, a State Surveyor, under the direction of the Commissioner of the General Land Office, undertook to construct and locate on the ground Block 194. This construction and location became known as the Dod Method, and is, as is the Turner theory, fully explained in Turner v. Smith, 122

Tex. 338, 61 S.W.2d 792. Briefly, the Dod method constructs Block 194 by giving effect to the east line of Block Z and to the calls for adjoiners with corners of sections in Block 178 to the South and others east, which method gives excessive lengths to the North and South lines of sections in Block 194, as well as the east and west lines, whereas the Turner method disregards the calls for the adjoiners just noted and allows no excess to the east and west lines but locates the several sections according to the calls for course and distance.

Prior to the Nichols assignments of the tracts here involved the Yates Oil Field had become a highly productive field, ranking among the greatest. The California Company owned valuable holdings in the area. It caused its engineer, Taylor, to survey its property with the view of giving it ground locations. The so-called Dod method was adopted and sought to be duplicated. As a part of this undertaking the common corners of Sections 24 and 23 to the east, Block 194, were marked with one and one-half inch galvanized pipes on the tops of which was stenciled "The California Company", and the section corners indicated. At the time of the Nichols assignments these were the only ground markings in the area purporting to locate section lines and boundaries. After the assignment by Nichols to Cosby, Nichols told Cosby how to locate his lease from the California pipes, and declined to incur the expense to survey it, saying it could be thus located. Prior to the sale and assignment to McGee, Nichols told McGee the lease could be located from the California pipes or corner, and a few days thereafter showed him the pipe. McGee's Company, Matador Oil Corporation, located and drilled the first well. Cosby completed his a little later. Each of these wells were located with respect to lines run from the California corner. All subsequent locations on both tracts were likewise made from the corner and in all applications for permits and in all other dealings with the Railroad Commission all wells were represented as so located. Indeed, the Dod location and survey was the only recognized location at such times

until the final determination of the Turner-Smith case. In fact the plaintiff asserts in its brief the Dod location was the only recognized location until the final decision in Federal Royalty Company v. State, 128 Tex. 324, 98 S.W.2d 993, November 25, 1936. In June or July 1929, plaintiff's engineer, Mr. W. P. Moore, staked its No. 3 well from the California pipes shown him by Taylor, who did the work for the California Company. In fact, all wells were thus located on both tracts and have been continuously produced and are today, by plaintiff and defendants.

· It is true the Turner case had been filed at the dates the Nichols assignments were made wherein it was sought to locate Block 194 according to the Turner method, which did ultimately move all eastern boundaries west. Plaintiff asserts in its brief the defendants knew at the time they acquired the Cosby lease litigation then pending would determine its boundaries. Doubtless everybody knew from the date the Turner case originated it would affect all boundaries in Block 194. The very purpose of the suit was to construct the block differently from the Dod construction. That fact might have well influenced Nichols to point out specifically to McGee his 40 acres was located from the California corners. The sale had from necessity to be made with respect to some location. As heretofore pointed out the Dod construction was the only recognized one at the time and the California locations were the only ground locations in existence then.

Notwithstanding the earnest and forceful arguments made by plaintiff we have reached the conclusion the principles enounced in Bond v. Middleton, 137 Tex. 550, 155 S.W.2d 789, and the cases there referred to, and the subsequent cases cited by the defendants, Crump v. Humble Oil & Refining Co., Tex.Civ.App., 164 S.W.2d 786, and Harrison v. Manvel Oil Co., 142 Tex. 669, 180 S.W.2d 909, are clearly applicable to the facts here, and so we hold the descriptions refer to the California lines and corners, based upon the Dod method, the then only known and recognized method of construction and ground locations, and had no reference to the undetermined and unsettled construction applied in the Turner case.

As we understand it, plaintiff in its brief contends Cosby and the Matador Oil Corporation by agreement dated October 8, 1928, established the boundary between the tracts here involved and fixed it according to the true boundary to be determined and as was determined by the Turner case, and that Nichols assigned the leases in accordance with such boundary. We do not so construe the agreement. The agreement recites the ownership of the two tracts; the pendency of the Turner case; that Cosby had drilled one well and connected it with the Humble Pipe Line Company's pipe line and contracted for the sale of the oil to the Humble Oil & Refining Company; that there had been oil produced and run and other oil was expected to be produced and run from such well in said line or other lines to which he might connect his well or wells, and the agreement then provides:

"Whereas, the parties hereto have mutually agreed that in the event the boundary lines of said leases above referred to shall by the final decision in said litigation be altered or changed, moving the boundary line of the said Party of the Second Part to such a distance as would include the well now drilled, or any additional wells that may hereafter be completed on said property by the Party of the First Part, that the said Party of the Second Part does hereby release, relinquish and quit claim to the Party of the First Part, his heirs or assigns, and the Humble Oil & Refining Company or any other purchaser of said oil, all right, title, interest, or equity it may have upon said final decision, and any proceeds derived from oil produced from said oil wells owned and held by the Party of the First Part, on said property, and

"Whereas, for and in consideration of this release and relinquishment, the Party of the First Part agrees in the event of a final decision that said boundary line shall be moved to such extent as to include said wells that he does hereby release, relinquish, and quit claim said interest so

held by him in said wells, and agrees to deliver to the party of the Second Part without cost, said wells above mentioned, at the date of the final decision regarding the removing of such boundary line.

"This contract shall not be construed as to abridge the right or rights of either Party hereto in defending the titles to the properties owned as they now stand or for the recovery of damages.

"Witness our hands, etc."

What is apparent is the Pipe Line Company and the purchaser of the oil was unwilling to accept, run and pay for the oil as run because of the Turner case and the questions there raised. To relieve that situation Matador released, relinquished and quitclaimed all right, title, interest and equity it might have by reason of the Turner case, and that is made perfectly plain. On the other hand Cosby released, relinquished and quitclaimed his interest in the wells "in the event of a final decision that said boundary line shall be moved to such extent as to include said wells," but it does not say in the event the final decision in the Turner case has the effect to alter the boundary. The last paragraph makes it still plainer the Turner case was not to settle the boundary issue between the parties to the contract when it reserves to each of them the right to defend the properties as they then stood.

It again appears such was not the effect of the Cosby-Matador agreement in a contract entered into between the Receiver for Cosby Producing & Royalty Company, the then owner of the 20-acre tract and plaintiff, dated the 27th of March 1934, wherein it is recited since the decision of the Supreme Court in the Turner case "a controversy has arisen between Phillips Petroleum Company and Cosby Producing & Royalty Company respecting the title and ownership of a strip of land off the west end of the Southeast Quarter (SE¼) of the Northeast Quarter (NE¼) of said Section 24 * * * and in order to stay the filing of suits * * * the Cosby Producing & Royalty Company hereby agrees with Phillips Petroleum Company that, in the event any suit is hereafter filed against the said Cosby Producing &

Royalty Company by Phillips Petroleum Company for the recovery of the title to and possession of the strip of land heretofore referred to * * * the Cosby Producing & Royalty Company will not seek to support or establish the defense of limitation as against the right of Phillips Petroleum Company to recover the title and possession of said strip of land, * * * by virtue of time accruing from and after this agreement." It further provided: "Except as herein stated, all other matters of defense whether the same affect the title to said lands or the right of possession thereof * * * are expressly reserved."

Further than these plaintiff did not try its case upon the theory of an agreed boundary expressed in the contract.

The agreement between the Receiver and the plaintiff was made because the Humble Oil & Refining Company, the purchaser of the oil from the Cosby wells, after the decision in the Turner case became final, refused to make further payments but held them in suspense until it was relieved of any liability for the payment of the Receiver's operating expense in the sum of $350.00 per month by the agreement of the parties.

From what has been noted it, we think, clearly appears there was no agreed boundary by reason of the Cosby-Matador agreement.

We think we are not necessarily compelled to look to the assignments and all the facts heretofore related to determine from what locations and boundaries the tracts were to be located on the ground. So far as the 40-acre tract is concerned Nichols expressly sold to McGee his tract to be located from the California corners. This under the conditions then prevailing he might well have designedly done. It is apparent the location thus designated was accepted because, as heretofore pointed out, the lease was drilled and produced according to such location. It is thought Nichols had a right to designate from what point or corner the land he was selling should be located, and if a shortage in the tract subsequently developed it would give plaintiff no right to shove west

and make up the deficiency off of defendants. We regard the rule announced in Briscoe v. Puckett, Tex.Sup., 12 S.W. 978, applicable to these facts, and the fact there was a common vendor who owned the lands on either side of the dividing line does not distinguish it. Here, as there, Nichols pointed out the corner and lines from which the tract could be and was to be located.

Since there is no dispute as to what the facts are, and all the facts having been apparently fully developed, we have concluded the case must be reversed and that it should be rendered. It is therefore accordingly ordered that the judgment of the trial court be in all things reversed and judgment here rendered that plaintiff take nothing by its suit against the defendants and that all costs be taxed against the plaintiff.

The bases of our conclusions are such as render plaintiff's cross-assignments immaterial and a discussion of them unnecessary.