### RAY v. STATE.
No. 8992.

Court of Civil Appeals of Texas. Austin.
July 9, 1941.

Rehearing Denied July 26, 1941.

J. F. Hair, Amos Felts, Wheeler & Wheeler, and Cofer & Cofer, all of Austin, for appellant.

Gerald C. Mann, Atty. Gen., and Robert E. Kepke, James Noel, and George W. Barcus, Asst. Attys. Gen., for appellee.

BLAIR, Justice.

Appellee, State of Texas, sued appellant, Worth S. Ray, to cancel an award and sale to him by the Land Commissioner of 183.-47 acres of land in Dallas County as unsurveyed school land, and to remove cloud from the title to the land by reason of such award and sale. The trial to the court without a jury resulted in judgment for the State as prayed; hence this appeal.

Prior to 1931 the land involved was a part of the bed of the Trinity River, a navigable stream in fact and in law. Chicago, R. I. & G. Ry. v. Tarrant County Water Control Dist., 123 Tex. 432, 73 S.W.2d 55. On August 2, 1930, a part of the water of the river was diverted to a new channel on authority given by the State to the City and County of Dallas Levee Improvement District, and sometime in 1931 about 32 acres of the land were filled in by artificial means to the approximate level of the surrounding terrain. Appellant asserted that the award and sale were valid as to the 32 acres, upon the theory that when the natural bed of the Trinity River was diverted by the new artificial channel, the old river bed was no longer a part of the navigable river bed, and the abandoned channel became a part of the unappropriated public domain, and under the Settlement Act as originally passed and re-enacted belonged to the Permanent School Fund, and was unsurveyed school land within the meaning of Art. 5323, R.C.S.1925, and Art. 5421c (Acts 1931, Chap. 271, p. 452) Vernon's Ann. Statutes, and was subject to sale under each Act, or in any event the 32 acres were a part of the public domain and as such were subject to sale under the latter Act. No claim is here made as to the re-maining 151 acres, but it is urged that if the judgment is reversed as to the 32 acres, then the judgment as to the 151 acres should be reversed so as to fully develop its status.

In denying the claims of the appellant, the trial court found and concluded as follows:

"12. I find that all of the land in question comprising 183.47 acres lies within the original, natural bed and channel of the Trinity River, a navigable stream.

"13. I find that the area in question continued to form the natural bed and channel of the Trinity River until August 2, 1930, upon which date a portion of the waters of the Trinity River which otherwise would have been carried by the natural channel thereof, was diverted into a new, artificial, man-made channel, approximately ½ mile distant from the natural channel. In this connection, I find that 151 acres of the area in question has continued as a natural river bed with well defined banks, a permanent source of water supply, and is used as a reservoir for drainage purposes containing an intermittently flowing stream of water until the time of the trial of this case, and that into said 151 acres there have always drained some of the natural tributaries of the Trinity River, together with a portion of the flood waters surrounding the City of Dallas, Texas.

"14. I find that approximately 32 acres of the area in question continued as a portion of the natural, original bed and channel of the Trinity River until some time in the year 1931, the exact date not being fixed by the evidence; that in the year 1931, the 32 acres which then comprised a portion of the bed and channel of the Trinity River was filled artificially with dirt through the action of the City and County of Dallas Levee and Improvement District, but following the artificial, man-made filling, said 32 acres thereby was brought to the proximate level of the surrounding terrain, and that such 32 acres thereafter did not contain any current of water, as the same was firm land.

"I find that approximately 32 acres of the area in question, namely, that part of said area which is bounded on the north by Turtle Boulevard and on the south by the south side of Young Street, was during the year 1931, filled hard and firm with a hydraulic fill and that no part of said 32 acres, since the year 1931, has ever

662

been used for drainage, but is firm enough for building purposes and is on a level with the surrounding lands. I further find that the places where the streets south of the 32 acres cross the area sued for have been filled in and is firm land, and that the places where the streets and roads cross the area sued for north of the said 32 acres have been filled in and are firm areas of land. The map attached hereto shows the location of the said 32 acres of land and also shows by name and designation the streets that have been filled in north of and south of said 32 acres.

"15. I find that the State of Texas did not participate in the actual filling with dirt of the above referred to 32 acres. Such filling was done by the City and County of Dallas Levee & Improvement District or other individuals or concerns.

"16. I find that the exact boundaries of the 32 acres above referred to are not fixed by the evidence, and that such boundaries are not described in any application, map or field notes filed in the General Land Office, nor by any pleadings herein, but that the extent of such 32 acres was approximated by the witness T. C. Forrest, who marked a map introduced in evidence in this cause with lines to indicate the approximate area of said 32 acres.

"17. I find that the diversion of the main, original and natural channel of that portion of the Trinity River bed involved in this suit was not caused nor contributed to by avulsion, reliction, accretion, nor by any other natural cause, but such diversion of said natural channel was caused entirely by artificial, man-made means.

"Conclusions of Law.

"1. I conclude as a matter of law that as to 151.47 acres of this tract, which has always formed and constituted a portion of the main, natural channel and bed of the Trinity River, that such river bed was not subject to sale under any law of this State for the reason that up to the time of the trial of this case, river beds as such have never been appropriated to the Permanent School Fund and no statutory or other authority has existed which authorizes the sale of river beds or channels; therefore, the sale of such 151.47 acres of land was illegal and invalid, and should properly be cancelled and annulled.

"2. I conclude as a matter of law that the remaining 32 acres of the land in question but for the artificial, man-made filling

thereof by the City and County of Dallas Levee and Improvement District would have continued to constitute a portion of the main, natural channel and bed of the Trinity River, and that the artificial filling in of the channel did not operate ipso facto to appropriate said 32 acres of land to the Permanent School Fund, or to change its status in any manner; therefore, no authority existed for the sale of said 32 acres of land and the purported sale and award of same to the defendant is likewise invalid and illegal, and should properly be cancelled and annulled."

We are of the view that no part of the land involved is unappropriated public domain belonging to the permanent school fund or unsurveyed school land and subject as such to sale, because all of the land is a part of the Trinity River bed, a navigable stream, the title to which is in the State for the benefit of the public at large. The law is settled that under Art. 7, § 2 of the Constitution, Vernon's Ann.St. and various legislative acts, the beds and channels of navigable streams are no part of the permanent school fund. State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065. Nor has there been such an abandonment of any of the land involved as a part of the Trinity River bed as would without specific legislation authorize its sale either as a part of the unappropriated public domain or as unsurveyed school land under either of the statutes relied upon by appellant. Dolan v. Walker, 121 Tex. 361, 49 S.W.2d 695, wherein it is held that when construed in the light of the public policy of this State to hold in trust for all the people the river beds of navigable streams, the various legislative acts must be construed as excepting from sale river beds, etc.

There can be no question under the findings of the trial court and as a matter of law that as to the 151.47 acres, which have always formed and now constitute a portion of the bed and channel of the Trinity River, that such 151.47 acres were not subject to sale, because river beds as such have never been appropriated to the school fund, and no statute or other authority has ever existed authorizing their sale.

Nor can there be any question, either as to fact or law, but that the remaining 32 acres have always and still form and constitute a portion of the bed and channel of the Trinity River. The mere fact that someone other than the State has by artificial means filled in this portion of the riv-

er bed does not change its status as river bed land. The purpose of filling in this land was not shown, nor was it shown that the State authorized the filling in of the 32 acres. Nor was the Land Commissioner authorized to assume that the State had abandoned this filled in portion as a part of the river bed. Nor did the fact that the State may have authorized the Levee Improvement District to divert the waters from the 32 acres to a new artificial channel authorize the Commissioner to determine that the land was unappropriated public domain or unsurveyed school land. A somewhat analogous situation was presented in the case of Anderson v. Polk, 117 Tex. 73, 297 S.W. 219, wherein the City of San Antonio, having authority to change the course of the San Antonio River, converted a part of its former bed into dry land, the court held that a petition for mandamus to require a survey of the abandoned river bed to be made for the purpose of location on same as a part of the public domain of the State, to be bad as against a general demurrer because the petition did not show the abandoned river bed to be a part of the "vacant public domain."

█ In this connection it may be further observed that under the public policy of this State in regard to reservation from sale of the beds of navigable rivers, it is no longer a question left to the judgment or discretion of the Land Commissioner as to whether a stream is navigable, but that because of the importance of such matter, it is a question for judicial determination. State v. Bradford, supra. Likewise the question of whether the bed of a navigable stream has been abandoned by the State is one either for judicial determination or legislative action, and particularly is it one for legislative action where a river bed and channel have been changed by man-made artificial means rather than by avulsion or erosion.

█ If, however, we are mistaken in the view that the State has not abandoned the 32-acre tract as a part of the Trinity River bed, and it is abandoned river bed, still it is not subject to sale either as unappropriated public domain or as unsurveyed school land, in absence of legislation authorizing such sale. This 32-acre tract was a part of the river bed until it was filled in by artificial means in 1931, and as such was by each of the Acts relied upon by appellant reserved to the public and specifically excepted from sale, and no subsequent legislation has authorized its sale as abandoned river bed, and no legislative authority has ever existed authorizing the sale of abandoned river beds. The absence of such legislative authority may be accounted for because of court decisions holding that where a river by process of erosion or avulsion changes its course and establishes a new bed or channel, the former bed, abandoned by the river, becomes the property of the adjacent owners. Manry v. Robison, 122 Tex. 213, 56 S.W.2d 438; Hancock v. Moore, 135 Tex. 619, 146 S.W.2d 369. Manifestly, if the State has no title to abandoned river beds, it cannot sell them. But we are not here concerned with the character of right or title adjacent or riparian owners may have in the bed of a river which has been abandoned by erosion or avulsion, because in the instant case the bed or channel was not changed by erosion or avulsion, but by man-made artificial means for a public purpose authorized by law, and the legislature has not declared that such filled in portion of the original river bed to be abandoned river bed; nor has it made any provision for the sale of the artificially filled in portion of the river bed, which was not shown to have been filled in under the authority of the State. Moreover, and in so far as this record discloses, the filled in portion may be necessary to make effective the changing of the course or channel of the river for a lawful purpose, and as such remains a necessary part of the river bed or channel. This is under the rule of statutory construction that grants for public purposes will be liberally construed, and laws that make reservations for public purposes will be liberally construed so as to effectuate such reservation, and will necessarily carry with them any use of the property which incidentally or reasonably effectuate the reserved right. State v. Bradford, supra.

Our above conclusions render unnecessary a discussion of any other question raised relating to the sufficiency of the application of appellant under either statute relied upon by him. Suffice it to say, and in order that no confusion may arise, we agree with the conclusion of the trial court that Art. 5323, R.C.S.1925, was expressly repealed by Acts 1931, Chap. 271, 42nd Leg., Art. 5421c, Vernon's Civ. Annotated Statutes; and whether appellant's application came within the saving clause of the repealing Act or within the latter Act is not material, in view

of the conclusions that the land in question was not unappropriated public domain or unsurveyed school land and as such subject to sale.

The judgment of the trial court is affirmed.