

# THE ATTORNEY GENERAL
## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

March 4, 1949

Hon. Bascom Giles, Commissioner
General Land Office
Austin, Texas

Opinion No. V-782

Re: Authority of the School Land
Board to sell or lease a 110
acre tract of land acquired
by the State in the purchase
of a site for Prairie View
Normal and Industrial College

Dear Sir:

You have asked us whether a certain 110 acre
tract of land in Waller County "now belongs to the Pub-
lic Free School Fund under the provisions of Article
5421c of Vernon's Civil Statutes . . . and does the
School Land Board have authority to either lease or
sell said land." We answer both questions in the neg-
ative.

The tract in question was conveyed in 1877
by deed to R. B. Hubbard, Governor of the State of
Texas and his successors in office, when the site of
Prairie View Normal and Industrial College was pur-
chased, in consideration of the purchase of certain
other land. The conveyance was "to and for any and
all uses and purposes to which the same may be appro-
priated destinated or in any manner utilized by the
grantee herein mentioned. . . ."

The land was described in the deed as follows:

". . . One hundred and ten (110) other ac-
res of land off of a three hundred and twenty
(320) acre survey patented to the heirs of Sol-
omon Smith No. 726, Vol. 11, the said one hun-
dred and ten (110) acres lying on the south side
of said three hundred and twenty (320) and ad-
joining the said Law Survey and is described by

metes and bounds in Decree of Partition in District Court of Austin County in Matters Probate between Helen M. Kirby and the Estate of Jared E. Kirby, dec'd., to which reference is here made for more particular description."

You have not furnished us with copies of the instruments on file in your office relating to the location, survey and patenting of the Solomon Smith Survey in Waller County. Volume 1 of "Abstract of All Original Texas Land Titles Comprising Grants and Locations to August 31, 1941," prepared by you shows that patent No. 726, Vol. 11, for 320 acres of land in Waller County was issued on November 17, 1854, to the Heirs of Solomon Smith. Since you raise no question, we take it that you deem the Solomon Smith Survey and patent to be valid and the 110 acre tract to be included therein.

The Act to establish an Agricultural and Mechanical College of Texas for the benefit of the colored youths was approved August 14, 1876. It provided for the establishment of such a college; authorized the Governor to appoint a Commission to select a site, containing not less than five hundred acres of land suitable for agricultural purposes; authorized this commission to receive donations of land and money to aid in the erection and maintenance of the college; and placed the college, when located and established, under the supervision and control of the Board of Agricultural and Mechanical College. This Act appropriated the sum of twenty thousand dollars, or so much as deemed necessary to locate, erect, furnish and operate the college. (See Acts 1876, p. 136.)

The deed in 1877 to Governor Hubbard, previously referred to, conveyed 800 acres in consideration of the sum of $12,000 in treasury warrants; and "in consideration of the sale of said eight hundred (800) acres," the grantors did "give, grant and donate" to the Governor and his successors 588 acres adjoining the 800 acres, and, for the same purpose, the 110 acre tract now in question. It is clear from the deed and from the Act that the 110 acre tract was acquired by the State for the purpose of establishing and locating the contemplated college. Though not expressly stated in the deed, title so acquired is in the State of Texas. Walsh v. University of Texas, 169 S.W. 2d 993 (Civ. App., 1942, writ ref.)

According to your letter, this tract has never been used by the State. In fact, it is recited in H.C.R. No. 41 of the 49th Legislature, 1945, that the tract has been within the enclosure of a private citizen and in constant use, by him, we presume, for more than twenty-five years. It is not stated whether such possession is adverse, under claim of title, or in recognition of title in the State. We have been furnished no abstract from which we could determine whether or not the State acquired good title under its deed. Such title, if acquired, could not be lost by adverse possession. Art. 5517, V. C. S.

The college for which this land was acquired is under the control and supervision of the board of directors of the Agricultural and Mechanical College, with the same powers and duties as conferred by law for the government of the Agricultural and Mechanical College. Art. 2638, R.C.S.; Art. 2643b, Sec.2, V.C.S. Our opinion V-320, dated June 30, 1947, held that neither the Local Board of Managers of North Texas Agricultural College, nor the Board of Directors of Texas Agricultural and Mechanical College was authorized to convey an excess tract of land except through act of the Legislature. Our opinion O-2417, dated June 24, 1940, held that neither such Board of Directors, the Land Commissioner, the Board of Control, nor the Attorney General had statutory authority to execute a conveyance of certain lands theretofore acquired by the Agricultural and Mechanical College. We believe these opinions to be correct and therefore conclude that there is no statutory authority for the sale of the 110 acre tract of land in Waller County which was acquired for the State under the authority of the Act to establish an Agricultural and Mechanical College of Texas for the benefit of colored youths. The Legislature seems to have been of the same opinion, since in 1945 it attempted by resolution to authorize the Commissioner of the General Land Office to sell this land. H. C. R. No. 41, 49th Leg., 1945.

There is no State official or board vested with general sales power over state-owned lands. The Commissioner of the General Land Office is a constitutional officer of the Executive Department. Art. IV, Sec. 1, Constitution of Texas. He is required to "perform such duties as are or may be required of him by

law." Id. sec. 23. He has no authority except that which has been conferred upon him by law. 34 Tex. Jur. 31.

The General Land Office, itself, is not a sales office. It is the office "where all land titles which have emanated or may hereafter emanate from the State shall be registered. . . ." Art. XIV, Sec. 1, Const. of Texas; 34 Tex. Jur. 28, 29.

The power and duty to sell public school land is in the Legislature. Art. VII, Sec. 4, Const. of Texas. As stated in Schneider v. Lipscomb Co. N. F. L. Ass'n:

"The Commissioner does not make the sale. It is accomplished by the offer made by the State in the statute which prescribes the terms and conditions of the sale, and by the acceptance of the offer by the intending purchaser in his taking the several steps for purchase as set out in the statute." (202 S.W. 2d 832 at 836, Tex. Sup., 1947.)

The Legislature may impose upon the heads of the Executive Department duties regarding such lands. Arnold v. State, 71 Tex. 239, 9 S.W. 120 (1888). Between the abolition of the State Land Board in 1887 and the creation of the School Land Board in 1939, the duty to pass upon applications to purchase was placed upon the Commissioner of the General Land Office. As stated by Mr. J. H. Walker in his 1934-1936 Report:

"The constitutional functions of the office of Land Commissioner are restricted to the registration of titles and activities incident thereto. The basic enactment was in line with prior constitutions and legislation which imposed upon the commissioners only ministerial duties. The selling and granting of land were placed with other authorities. Now the Commissioner is at the head of a great business institution." (p. 4.)

The duties of the School Land Board are prescribed by Articles 5421c-3, 5421c-4 and 5421c-5, V.C.S.

Like the Land Commissioner, the other members of the Board, the Governor and Attorney General, are executive officers performing "such other duties as may be required by law." See Art. IV, Sec. 22, Const. of Texas. The Act creating this Board requires, in substance, that it advertise school lands for lease or sale and entertain and pass on bids therefor. H.B. 9, Acts 1939, p. 465. It has no powers not related to these functions or not otherwise conferred by law.

Your letter refers to Article 5421c, V.C.S. Section 1 thereof reads as follows:

"All lands heretofore set apart to the public free school funds under the constitution and laws of Texas and all the unappropriated and unsold public domain remaining in this State of whatever character, except river beds, and channels, and islands, lakes and bays and other areas within tide water limits, are subject to control and sale under the provisions of this Act."

It is, perhaps, this provision which has raised the question of the authority of the School Land Board to sell the Waller County land. Article 5416, R. C. S., sets apart and grants to the permanent school fund:

". . . all lands heretofore set apart under the constitution and laws of Texas, and all of the unappropriated public domain remaining in the State of whatever character, and wheresoever located, including any lands hereafter recovered by the State except that included in lakes, bays and islands along the Gulf of Mexico within tidewater limits."

We note that the wording of Article 5416 and that of Section 1 of Article 5421c is very similar. It would be reasonable therefore to construe Article 5421c as placing on the market for sale only that part of the public domain belonging to the school fund.

Indeed, this was the view taken in 1941 by Hon. George W. Barcus, then Assistant Attorney General and now a member of your department. In his brief in

<u>Ray v. State</u>, Mr. Barcus wrote as follows regarding the authority under Article 5421c to sell an alleged unsurveyed area of public domain:

"Upon examining the caption of the Act, we find the definite statement that the Act is one 'to regulate the sale and lease of lands set apart for the benefit of the public free school fund' and to provide for the disposition and sale of minerals in certain coastal areas and '<u>all unsold public free school lands</u>, both surveyed and unsurveyed', and at another part in the caption, we find that the Act is one 'providing generally the method and means <u>for the sale of public school lands and the lease and development of the public school lands and coastal areas</u>'." (Emphasis in original.)

"At no place in the caption do we find any mention nor any language used which indicates that any lands other than public free school land is included within the sale, provisions and regulations of the Act, or that any area other than public free school land and certain coastal areas are included within the leasing provision. . .of the Act, with the exception of a special class of . . . land which is specially treated in Section 5.

"It is true that if Section 1 is considered alone and without relation to the caption of the Act or to remaining sections the wording of such isolated section is broad enough to include any land in Texas <u>except river beds and certain coastal areas.</u>

"Appellee in the case at bar contends that when all of the provisions of Article 5421c are read as a comprehensive whole and in connection with the caption of said Act, Section 6 of the Act must be construed to authorize and deal with the sale of unsurveyed school land only. The land described in applicant's application never having been appropriated to the school fund, it follows that an intended sale thereof under Article 5421c is unauthorized by law. . . ." (Appellee's brief, Ray v. State, 153 S.W. 2d 660,

No. 8992 in Austin Court of Civil Appeals, 1941, error ref. W.M.)

This construction is supported by the terms of the Act. The "vacant and unsurveyed land" subject to sale or lease under Section 6 of Article 5421c is now specifically defined as "an area of unsurveyed school land. . . ." The surveyed land subject to sale is defined as:

> ". . . all tracts or parts of tracts heretofore surveyed either on the ground or by protraction, and set apart for the public school funds and which is unsold, and for which field notes are on file in the General Land Office or which may be delineated on the maps of said office as such. . . ."

The School Land Board Act of 1939 likewise supports this construction. (H.B. 9, Acts 1939, p. 465.) This act sets apart the mineral estate in islands and certain submerged areas to the School Fund and provides (Sec. 5) that:

> "All lands set apart for the permanent free school fund and the several asylum funds by the Constitution and the laws of this State and the mineral estate in river beds and channels and the mineral estate in all areas within tidewater limits. . . are subject to control and disposition in accordance with the provisions of this section and other pertinent provisions of this Act and other laws not in conflict herewith. . . ." (Art. 5421c-3, Sec. 1, V.C.S.)

Chapter 498, Acts 1941, makes the same provision, though in slightly different words.

Under the previous construction by this office, as expressed in the aforementioned brief, the crucial inquiry is whether the 110 acre tract patented in 1854 as part of the Solomon Smith survey and acquired by the State in the purchase of the site for Prairie View in 1877, has ever been set apart for the public school fund. Under a broad construction of Article 5421c, the inquiry is whether this tract is "unappropriated . . . public domain."

The lands set apart to the school fund under the Constitution are the following:

"All funds, lands and other property heretofore set apart and appropriated for the support of public schools; all the alternate sections of land reserved by the State out of grants heretofore made or that may hereafter be made to railroads or other corporations of any nature whatsoever; one-half of the public domain of the State; and all sums of money that may come to the State from the sale of any portion of the same, shall constitute a perpetual school fund." Article VII, Sec. 2, Constitution of 1876; see Hogue v. Baker, 92 Tex. 58, 45 S.W. 1004 (1898).

It is our conclusion that the above provision does not affect the status of a tract of patented land acquired for a legislative purpose by the State in 1877 by deed. The prior laws setting apart funds and lands to the school fund have been reviewed. None concern patented land reacquired by deed. See Constitution of 1845, Article X, Sec. 2; Act of Jan. 31, 1854, 3 Gam. Laws 1461; Act of August 29, 1856, 4 Gam. Laws 525; Act of Feb. 11, 1858, 4 Gam. Laws 1065; Constitution of 1866, Article X, Sec. 3; Constitution of 1869, Article IX, Sec. 6; and Act of March 18, 1873, 3 Sayles Early Laws, 177.

The Solomon Smith Survey was not an "alternate section." Nor was this patented survey "public domain" in 1876. See Day Land and Cattle Co. v. State, 68 Tex. 526 at 547, 548, 4 S.W. 865 (1887); Kuechler v. Wright, 40 Tex. 600 at 646 (1874); Decourt v. Sproul, 66 Tex. 368 (1886); Mills v. Needham, 67 S.W. 1097. (Civ. App. 1902, err. ref.) Lands reacquired by the State after 1876 did not automatically pass to the school fund. State v. Powell, 132 S.W. 746 (Civ. App., 1911).

At this point our two lines of inquiry merge. The Settlement Act of 1900 (Acts 1900, 1st C.S., p. 29) set apart and granted to the school fund:

". . . all of the unappropriated public domain remaining in the State of Texas of whatever character and wheresoever located. . . ."

"Unappropriated public domain" within the meaning of this Act has been defined as ". . . land which in fact is not included within the bounds of any survey. . . ." Weatherly v. Jackson, 123 Tex. 213, 71 S.W. 2d 259 at 265 (1934). The Act also applied to certain surveyed lands which had lapsed into an unappropriated status for failure of an individual to perfect his claim. Barber v. Giles, 208 S. W. 2d 553 at 554 (Tex. Sup., 1948).

Areas reserved for the use of the government or the people, however, were "appropriated" and therefore did not pass to the school fund. State v. Bradford, 121 Tex. 515, 50 S.W. 2d 1065 (1932); Anderson v. Polk, 117 Tex. 73, 297 S.W. 219 (1927); see Taylor v. Hoya, 29 S.W. 540 (Civ. App., 1895).

This is the necessary result of the rule stated in Roberts v. Terrell, 101 Tex. 577, 110 S.W. 733 at 735 (1908) that:

"Having once specifically reserved or set apart or withdrawn certain lands . . . it is not to be supposed that by subsequent legislation the Legislature intended to authorize the appropriation of them unless such intention was clearly expressed and it has therefore been held in a great number of cases that general laws authorizing locations or entries upon and surveys of public lands, or public domain, or vacant lands, do not apply to lands that have previously been so appropriated, reserved, set aside, or withdrawn."

See State v. Delesdenier, 7 Tex. 76 at 107 (1851); Kuechler v. Wright, 40 Tex. 600 at 646 (1874); Gammage v. Powell, 61 Tex. 629 (1884); Day Land and Cattle Co. v. State, 68 Tex. 526 at 547, 4 S.W. 865 (1887); Landry v. Robison, 110 Tex. 295, 219 S.W. 819 at 820 (1920); Dolan v. Walker, 121 Tex. 361, 49 S.W. 2d 695 at 698; State v. Bradford, supra, at 1069; Lorino v. Crawford Packing Co., 142 Tex. 51, 175 S.W. 2d 410 at 413 (1943); Wilcox v. Jackson, 13 Peters 498 (U. S., 1839); Newhall v. Sanger, 92 U. S. 761, 23 L. Ed. 769 (1875); Opinion of G. W. Terrell, Attorney General of Republic to President, January 25, 1842 (Land Office files); Opinion of Attorney General to Land Commissioner, dated May 19, 1874 (Land Office files); Opinions of Attorney General,

Vol. 11, p. 667 (1886); Vol. 12, p. 342 (1888); Vol. 14, p. 40 (1891); Vol. 14, p. 359 (1892); Vol. 24, p. 88 (1911); Vol. 39, p. 63 (1914); Opinion No. 2783, dated August 21, 1929 to Hon. J. H. Walker; Opinion No. V-741, dated Dec. 16, 1948, to Hon. Bascom Giles.

The "appropriation" of land is not dependent on possession and use. Weatherly v. Jackson, supra. Non-user of the Solomon Smith 110 acre tract would therefore not render it subject to sale as unappropriated public domain. In the Ray case, supra, the appellants argued that an unused, filled-in portion of the Trinity River bed was unappropriated public domain and subject to sale under Article 5421c, saying that:

"... regardless of whether the land is part of the public school fund, still the sale was valid under the Act of 1931, Chap. 271, p. 452, and that statute provides for the sale of all unappropriated and unsold public domain remaining in the State. . . ." (Appellants' brief, p. 10, Ray v. State, 153 S.W. 2d 660).

The Court held invalid the Land Commissioners' award of the area, saying:

"We are of the view that no part of the land involved is unappropriated public domain belonging to the permanent school fund or unsurveyed school land and subject as such to sale, because all of the land is a part of the Trinity river bed, a navigable stream, the title to which is in the State for the benefit of the public at large. . . ."

"If, however, we are mistaken in the view that the State has not abandoned the 32 acre tract as a part of the Trinity River bed and it is abandoned river bed, still it is not subject to sale either as unappropriated public domain or as unsurveyed school land in the absence of legislation authorizing such sale. . . ." (153 S.W. 2d at 662).

Our conclusion has other support. The phrase "vacant" or "unappropriated domain" has an ancient meaning in this jurisdiction. Under Spanish law, vacant lands meant the unappropriated royal domain. The "natural" or "vacant" lands were the King's special prerogative, to be sold or granted as a reward of merit or as a matter of pure favor. Lands held by the government or its subdivisions for public purposes were, on the other hand, reserved from sale. Sheldon v. Milmo, 90 Tex. 1, 36 S. W. 413, 415 (1886).

The phrase "vacant domain" was used in the first general colonization law, that of March 24, 1825. Sayles' Early Laws, Art. 40. Subsequent laws relating to the disposition of the public domain spoke of vacant unappropriated lands. See Act of Dec. 2, 1850, Sayles' Early Laws, Arts. 2164, 2374; Act. of Dec. 21, 1853, Sayles' Early Laws, Art. 2577; Act of Feb. 4, 1854, Sayles' Early Laws, Art. 2381; Act of Feb. 13, 1854, Sayles' Early Laws, Art. 2427; Act of Feb. 11, 1858, Sayles' Early Laws, Art. 2757; Acts of Feb. 16, 1858, Jan. 1, 1862, and March 4, 1863, Sayles' Early Laws, Arts. 2757, 2977, 3055; Acts of Dec. 15, 1863 and Nov. 7, 1864, Sayles' Early Laws, Arts. 3122, 3182; Act of March 10, 1875, Sp. Laws, 14th Leg. p. 69; Act of Aug. 16, 1876, Sayles' Early Laws, Art. 4242; Act. of Feb. 20, 1879; and Act of July 14, 1879, amended by Act of March 11, 1881, R. S. 1879, Art. 3976a. The Articles of Annexation spoke of ". . . all the vacant and unappropriated lands. . ." See Art. 5415, R. C. S., 1925. The Act of January 22, 1845, describes vacant public domain as land ". . . which has been neither filed upon, entered, located nor surveyed by virtue of some genuine, legal and valid certificate, or other evidence of title to land . . ." 2 Gam. Laws 1072.

The tabulations prepared for the Settlement Act show that previously titled land was not included in the "unappropriated public domain." See Report of Charles Rogan, Land Commissioner, dated November 1, 1899; Message of the Governor, S. J. 1st C.S., 26th Leg., 1900, p. 14. While such tabulations are not determinative as to a particular tract (Eyl. v. State, 84 S.W. 607 (Civ. App., 1904)), they indicate in general the lands intended to pass to the school fund. State v. Bryan, 210 S.W. 2d 455 at 457 (Civ. App., 1948, error ref., n.r.e.). It is the legislative intent which controls. Wortham v. Walker, 133 Tex. 255, 128 S.W. 2d 1138 (1939).

You are, therefore, respectfully advised that the 110 acre tract of land out of the Solomon Smith survey in Waller County, acquired by the State in 1877 as part of the site of Prairie View, does not now belong to the Public Free School Fund; and that, under present laws, the School Land Board does not have authority to sell or lease said land.

## SUMMARY

A tract of patented land acquired by the State in 1877 in the purchase of a college site is not subject to sale or lease by the School Land Board under Article 5421c or other present laws. Such a tract, though not now used by the State, remains appropriated to the purpose for which it was acquired pursuant to legislative authority, and therefore is not unappropriated public domain and has never passed to the school fund. Article 5421c, V. C. S.; Article 5416, R. C. S.; State v. Bradford, 121 Tex. 515, 50 S.W. 2d 1065; Roberts v. Terrell, 101 Tex. 577, 110 S.W. 733; Ray v. State, 153 S. W. 2d 660; Attorney General's Opinion V-741.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By Ben H. Rice, III
Assistant

APPROVED

Price Daniel
ATTORNEY GENERAL

BHR:bt/g