COX et al. v. CITY & COUNTY OF DALLAS LEVEE IMPROVEMENT DIST. et al.

No. 14648.

Court of Civil Appeals of Texas. Dallas.

March 27, 1953.

Rehearing Denied May 15, 1953.

Ivan Irwin and Aubrey J. Roberts, Dallas, for appellants.

Bowyer, Gray, Thomas, Crozier & Harris and Scurry, Scurry & Pace, Dallas, Price Daniel, Atty. Gen., and Jesse P. Luton, Jr., Asst. Atty. Gen., for appellees.

YOUNG, Justice.

The suit as instituted was one for mandatory and prohibitory injunction by City and County of Dallas Levee Improvement District and Dallas County Flood Control District, in which the State of Texas intervened by action in trespass to try title; the property involved being shown in red on plaintiffs' exhibit 31, consisting of a map to which reference will be made hereinafter. Parties defendant were W. T. Cox, individually and as guardian of the person and estate of Jane Ellen Cox, a minor, William Bond Cox, and Cadiz Corporation. Plaintiffs alleged that defendants were the owners of Lots 1 through 9, Block 69, Industrial Improvement Project, Units 1 and 2, an addition to the City of Dallas, and had encroached upon the old channel of the Trinity River contiguous thereto by the deposit of fill, erection of buildings and other improvements; praying that defendants be required to remove said encroachments; intervenor, the State, asserting title to the disputed area subject to the rights of the Levee District under its Plan of Reclamation theretofore undertaken. The answer of defendants was inclusive of general denial, pleas of limitation, laches, and estoppel.

The trial was to a jury; however, at conclusion of testimony and motions for instructed verdict, the case was withdrawn from the jury with rendition of judgment

for appellees; adjudging the State of Texas to be owner of the disputed strip, subject to the right of use and possession by Levee authorities under aforesaid Plan of Reclamation, defendants being given until April 1, 1953 to remove all structures encroaching upon the property set off in red * on attached map. Proper appeal has been perfected by defendants from this adverse ruling.

* Shaded area.

Material to the present controversy is the following background of facts as chronologically stated in reply brief of plaintiffs: City and County of Dallas Levee Improvement District and Dallas County Flood Control District are bodies politic and corporate pursuant to Acts of the Legislature and Sec. 59(a), Art. 16, State Constitution, Vernon's Ann.St.; and were created as such for purpose of constructing and maintaining levees and other improvements necessary for reclamation of lowlands subject to periodic overflow of the Trinity River adjacent to the City. In accordance with provisions of the Constitution and Statutes [1] a Plan of Reclamation was approved, adopted, and filed for record Nov. 6, 1926 covering some 10,500 acres of land lying within Levee District boundaries and under which Plan the course of the Trinity was changed, straightened, and placed between levees; and the old channel set aside for drainage and conduit purposes and the storage of storm waters. At the same time a survey of the old channel was ordered by the Levee District and its Commissioners of Appraisement; and an "on the ground" survey descriptive of the old channel so set apart under the Plan was incorporated in the report of the Commissioners of Appraisement and filed for record in office of County Clerk, Nov. 28, 1926.

The survey was undertaken under direction of T. C. Forrest, engineer for the Levee District, whose testimony on this trial was that the 1926 operation accurately surveyed the high or cut banks of the old channel, Trinity River, and meander lines established being monumented by iron pipes and witness trees.[2]

The following conveyances inclusive of the area in dispute, will be listed in order of their execution and filing for record: Warranty deed dated March 15, 1928, by Royal C. Miller et al. covering 326.5 acres, a part of the William S. Beaty Survey in Dallas County, to E. P. Cravens and J. T. Bowman, a provision thereof being: "The

1. Relevant in this connection are: sec. 59(a), (b), Art. 16, State Constitution; Arts. 4026, 5302, 7467a, 7467b, 7972, 7980, 7986, 7991, 7995, V.A.C.S.

2. Engineering methods employed in 1926 are reflected in the testimony of Mr. Forrest, viz.: "A The Commissioners of Appraisement of the City and County of Dallas Levee Improvement District requested the District Engineers to establish survey lines along the top bank of the Trinity River in order that the Commissioners might prepare descriptions of the lands abutting the river, against which they could set up a system of benefit assessments against those lands. It therefore became necessary to accurately survey the top bank of the river. It was all a jungle overflow area, with timber, brush and weeds; and it was under those circumstances that that survey was undertaken. Now, when the field crews went in to establish that line, the first job was to explore the general alignment of the river on each side and then establish on the ground a series of lines or meanders, as they are called, which would follow the high bank of the Trinity River; and wherever a bend in the river occurred there, an angle point would be established on these meander lines.

"Now because of the importance of this work, the ordinary surveying methods were not followed. Ordinary surveying calls for taking a compass or transit and reading a bearing along a line, based on the way in which the needle on the compass moves around. There is also on a transit a plate which is graduated into 360 degrees, and in establishing these meander lines we used this plate, and the angles were turned on the plate, rather than reading the needle, because the needle is not nearly so accurate as the actual turning of an angle. From point to point in the meander lines, the distance was chained with steel tapes in order to get the accuracy that the Commissioners of Appraisement required. And each one of those points was monumented with an iron pipe, and where it was practical to do so, witness trees were established. Over the years a number of those witness trees have been destroyed in the development of the property; but the river was meandered; both banks of the old channel was meandered completely from the Santa Fe Railroad upstream to the confluence of Elm and West Forks. "Q. Are those field notes set out in the report of the Commissioners of Appraisement? A. The field notes of the meander lines along the Trinity River are set out in the description of each piece of property that abuts the (old) channel. * * *

"Q. What is the average width of the Trinity River? A. The old channel of the river through this stretch right here at Dallas is about 175 feet."

lands herein described are located in and constitute a part of the City and County of Dallas Levee Improvement District and the Grantees expressly assume all obligations to said City and County of Dallas Levee Improvement District." Warranty deed dated July 10, 1928, from E. P. Cravens et al. to Industrial Properties Corporation, 24 acres out of aforesaid 326.5 acres of land; Warranty deed of June 1, 1938, from Industrial Properties Corporation to W. T. Cox, covering 40,851.5 sq. feet out of said 24-acre tract. All of these deeds in description followed the line of the old Trinity River channel as surveyed in 1926 and as set forth in report of the beforementioned District Commissioners of Appraisement.

On July 22, 1938 Industrial Properties Corporation platted the 24-acre tract into lots and blocks, describing it as Industrial Improvement Project Addition, Units 1 and 2. This plat was filed in office of County Clerk July 25, 1938 and recorded in Vol. 5, pp. 415–23, Map and Plat Records of Dallas County, Texas; and in identifying the lands as platted, and old river channel, said dedicators made use of the following: The survey of 1926, the descriptions theretofore recited in report of Commissioners of Appraisement, in deed from Miller et al. to Bowman and Cravens and from the latter parties to Industrial Properties Corporation; describing the property earlier conveyed to W. T. Cox (June 1, 1938) as Lot 1, Block 69.

By warranty deed of August 4, 1938 Industrial Properties Corporation conveyed to William T. Cox, Lots 2 through 9, Block 69, of Industrial Improvement Project Addition; such grantee on April 29, 1940 by similar deed conveying to Cadiz Corporation Lots 1 through 9 in said Block 69, same Addition, the instrument carrying the recital: "according to the map or plat thereof recorded in Vol. 5, p. 415, Map Records of Dallas County, Texas." And by warranty deed of June 13, 1942 Cadiz Corporation conveyed to William Bond Cox and Jane Ellen Cox, a minor, a tract of land not only embracing the lots just above described, but likewise inclusive of land to the middle of the old channel, Trinity River.

Appellants admit that the Trinity River is a navigable stream, nor do they contend that the old river bed (after shift of channel one-half mile further west) did not remain the property of the State of Texas. The former channel through its entire length contained 183.47 acres according to the 1926 field notes of Engineer Forrest; and reference may be here made to Ray v. State, Tex.Civ.App., 153 S.W.2d 660, for further facts covering the whole project of diversion of at least historical interest. In this connection the District Court transcript on trial of Ray v. State, 1941, was placed in evidence over defendants' objection; appellees claiming that all questions of boundary had been finally adjudicated in such prior suit.

Appellants advance in substance three points of appeal: The court's error, (1) in grant of injunction to Levee District plaintiffs because under undisputed evidence "plaintiff had assessed, levied and collected taxes on the very land involved, as the property of the defendants, and had failed to do equity to the defendants, and thus is not entitled to relief in its equitable action"; (2) (a) in admitting in evidence as stare decisis "the case of State v. Ray, Tex.Civ.App., 153 S.W.2d 660, because it appears therefrom that such proceedings were in trespass to try title and could only bind the parties to the suit and their privies"; (b) it similarly appearing that the Court of Civil Appeals decision in Ray v. State "did not involve the 151 acres of land of which appellants' lands are a part, the only determination as to such 151 acres being by a District Court"; (3) in withdrawing the case from the jury and rendering judgment for appellees "because the evidence raised an ultimate, material fact issue as to the location of the banks of the Trinity River which issue would determine the boundary line between lands of the parties."

■ In 1949 the Levee District sued appellants for taxes assessed and due for years 1938 to 1947 on the land involved, describing same as: 40,852 sq. feet in W. S. Beaty Survey (also called Industrial Improvement Project Lot 1, Block 69, and Lots 2 through 9 in Block 69 of Industrial

Improvement Project Addition); with like description in citation; judgment being rendered in February 1950 for $2,800.44 and foreclosure. Such judgment in decretal part described the land in same language as pleading and citation, as did the order of sale; the arrears of taxes being duly paid. In preliminary recitals said tax judgment went further in a metes and bounds description and included land "to the center line of the old channel of the Trinity River"; and the substance of point 1 is that plaintiffs could not thus recognize and acknowledge defendants' right and title to the area claimed by them and thereafter seek recovery of part thereof without doing equity. Obviously the land to center of old river channel was never the property of plaintiffs; the tax judgment in final analysis restricting the lien to the selfsame property in description as reflected in the petition. It is well settled that in case of conflict between preliminary or preamble recitals in a judgment and the decretal portion thereof, the latter (the express adjudication) controls. Magnolia Petroleum Co. v. Caswell, Tex.Com.App., 1 S.W.2d 597, Id., Tex. Com.App., 7 S.W.2d 867; Harrison v. Manvel Oil Co., 142 Tex. 669, 180 S.W.2d 909.

We now reach the main point of controversy from standpoint of appellants. While conceding that the old river channel is State-owned property, they say that their lands extend to the high or cut bank thereof and that a fact question exists as to its true location; in short, concerning the actual west meander line. Following is a resume of testimony relied upon by defendants in this connection: Initially and on Sept. 10, 1935, W. T. Cox had obtained from Industrial Properties Corporation a lease on land described generally as beginning at the southeast intersection of Industrial Boulevard with Cadiz Street; "Thence along the East right-of-way line of Industrial Boulevard a distance of two hundred fifty feet; Thence in an easterly direction along a line which is parallel to Cadiz Street, a distance of about two hundred ten feet to the high bank of the old channel of the Trinity River; Thence along said high bank of the old channel of the Trinity River following its meanders to its

intersection with the South right-of-way line of Cadiz Street; Thence in a westerly direction along the South right-of-way line of Cadiz Street to the place of beginning, containing about 50,000 square feet." Cox then commenced and completed in January 1936 a building on the tract, shown on map as hexagon-shaped and marked "Sportatorium"; see Map.

Cox testified to supervising the construction of this building; that same was erected on comparatively level land; that there was no filling in done in locating the structure; that the west bank of the old channel could be definitely seen, consisting of a sudden jump-off, with sufficient bank between river and building for him to feel safe about "cave-ins"; the bank cut or slope coming along a few feet away from the east wall where there was a very definite drop. The adjoining lots (2 through 9 inclusive) later acquired by Cox, some of which were improved by buildings, extended to top line of the disputed area (west meander line of old channel, as defendants claim); Cox stating that said high bank of the River had not changed since 1928 when he first became familiar with the area. Numerous exhibits by way of views of the Sportatorium site in course of construction, maps and pictures of the locality, accompany the record, generally in support of defendants' claims. Defendants have used and occupied the property since 1936, surrounding same with a high fence, except a portion of the channel side; and were it not the State of Texas the party that here asserts its title to the disputed area, appellants could safely interpose the ten-year bar of limitation, which of course they do not urge.

The original deed from Industrial Properties Corporation to W. T. Cox of June 1, 1938 to this "Sportatorium" lot conveyed the following property by metes and bounds: "Beginning in the south line of Cadiz Street at the intersection of the west bank meander of the old channel of the Trinity River; Thence south 35. deg. 21 min. west 148.76 feet to the southeast corner of Cadiz Street and Industrial Boulevard, said point being on a curve whose radius is 586.67; Thence along said curve in a

southeasterly direction a distance of 162.49 feet thru a central angle of 15 deg. 52 min. 09 sec. to the point of tangency, same being the east line of Industrial Boulevard, Continuing Thence along the east line of Industrial Boulevard south 25 deg. 52 min. 20 sec. east a distance of 87.51 feet to a corner; Thence north 64 deg. 7 min. 40 sec. east 165.59 feet to a point in the west bank river meander; Thence north 38 deg. 12 min. west along said river meander a distance of 188.45 feet to an angle point; Thence north 33 deg. 06 min. west 134.82 feet to the place of beginning, containing in all 40,851.5 square feet." The Corporation's further deed to Cox of August 4, 1938 conveys Lots 2 through 9, Block 69, of Industrial Properties Improvement Project Addition, Units 1 and 2, an addition to the City of Dallas "according to the map or plat thereof recorded in Vol. 5, p. 415, Map Records of Dallas County, Texas." Said map of dedication was filed July 22, 1938, the Sportatorium tract above described then being designated as Lot 1, Block 69, etc. Both instruments had as their north or northeast boundary the identical survey line established by Engineer Forrest in 1926 (lower line of red area on attached map); also as embodied in the Plan of Reclamation long before consummated by the Levee District.

These considerations, i. e., record facts antecedent to and running along with defendants' title, in our opinion, are preclusive of any claim on their part to the area in dispute.

In the first place, at the time of the Cox acquisition the west meander line (high or cut bank) of the old river channel was no longer an open question. Field notes to the old channel in its entirety (embracing 183.47 acres) had been definitely established as a part of the 1926 Plan of Reclamation and as approved by the State Reclamation Engineer, of which landowners contiguous thereto and their successors in title, at least, had statutory notice. Art. 7990, V.A. C.S., in part provides: " * * * When the plan of reclamation has been adopted as herein provided a copy of same shall be filed with the county clerk in each county where any lands lie, that will be affected in anywise by the plan of reclamation, and such filing shall be notice of its contents to all persons owning or having any interest in any lands in the county in which same is filed; and any amendments to said plan of reclamation shall be filed in like manner."

Dick Granger, presently with Forrest & Cotton, Engineers, in 1950 re-surveyed the particular locality, using the 1926 field notes of T. C. Forrest, and drew the plat here portrayed. He found and reconstructed the old channel meanders, finding several old angle points (iron pipes); testifying that the bottom side of said red area marked the true line as long earlier established. Mr. Forrest as a witness similarly confirmed the field notes and lines of such former survey; that in 1935, aside from encroachments and fills, the high banks of the River at Cadiz and Industrial Boulevard were substantially in the same condition as in 1926. It is thus seen that the identified field notes of a senior survey mark the west meander line or high bank of the Trinity River channel as it stood in 1926. In effect, it replaces for all time the old bank location, thereby assuming the highest possible dignity as an artificial object or marked line. Mr. Forrest bears witness to the integrity of said line as the north or northeast boundary, viz:

"A. The location of the river meander lines are unchanged. They are exactly the same place.

"Q. As in '26? A. Yes, sir. The river meander points were located in '26 along the general high banks of the Trinity River, and of course they have not changed.

"Q. They have not changed until this day? A. No, sir. They are a matter of record and cannot change."

Second: Appellants and their predecessors in title at all times recognized and acquiesced in the boundaries fixed in the Plan of Reclamation, report of Commissioners of Appraisement, and the survey of 1926, when the Levee District was created by using said line in making conveyances with reference thereto. "It is well settled that a line may be established as a true boundary line of a tract of land

by recognition and acquiescence in said line as the true line by all interested parties for a sufficient length of time. The length of time for which such recognition and acquiescence must continue in order to conclusively establish such line is a period of time beyond that required by the statute of limitations for the acquisition of land by adverse possession. * * *" Anderson v. Atlantic Oil Producing Co., Tex.Civ. App., 83 S.W.2d 418, 419.

Third: If not foreclosed by long acquiescence and recognition, then appellants are bound by the contents of deeds from Industrial Properties Corporation relating to quantity of land conveyed. The deed of June 1, 1938 to the tract later platted as Lot 1, Block 69, establishes the Forrest survey line as its northeast boundary. "Where a description is by metes and bounds, no land outside the stated boundaries will pass by the deed unless it appears that the grantor intended that a more general description, as by his designating a certain lot, control the recital of metes and bounds." 16 Am.Jur., p. 590. And the deed to Cox of Lots 2 through 9, Block 69, refers to a plat of the addition which in turn adopts the same identical boundary line. "All instruments in a chain of title when referred to in a deed will be read into it." Scheller v. Groesbeck, Tex.Com.App., 231 S.W. 1092, syl. 4.

■ Fourth: To establish title to any part of the area in dispute, appellants were required to show that the west bank of the old channel as located in the 1926 survey had been subsequently extended by deposit of solid material caused by action of the stream. Quite to the contrary, all the evidence tends to show that any change of location of west bank in the area was caused by a filling in of the old river channel through artificial means. " * * * The mere fact that someone other than the State has by artificial means filled in this portion of the river bed does not change its status as river bed land." Ray v. State, supra [153 S.W.2d 662.]

■■ The conclusions above stated render unnecessary a further ruling concerning the case just cited as stare decisis. It may be observed, however, that the point at issue in Ray v. State was not boundary, although the old channel area was then found to embrace 183.47 acres. The question there relating merely to the validity of a Land Commissioner's award. A decision cannot be stare decisis of an issue which was not presented to or passed upon in the case, cited as controlling, even though it involves the same subject matter. Eubanks v. State, Tex.Civ.App., 203 S.W.2d 339, writ ref.

Judgment of the trial court is in all respects affirmed.

## On Rehearing.

■ We recognize the doctrine extensively discussed in Stover v. Gilbert, 112 Tex. 429, 247 S.W. 841, 844, that meander lines, as a rule, relate to the sinuosities and course of a stream and do not constitute boundaries. This is so, says the Court, "in the absence of proof to clearly indicate a contrary intention * * *.' 11 C.J.S., Boundaries, § 30, pages 573, 574. Here, as is evident from the testimony of Mr. Forrest (see footnote 2, original opinion), his survey was of "the top bank of the river"; establishing on the ground "a series of lines or meanders, as they are called, which would follow the high bank of the Trinity River; and wherever a bend in the river occurred there, an angle point would be established on these meander lines." In other words, that the meander lines of the Forrest Survey and River bank meanders were coincidental.

And conclusive of the foregoing statement is intervenor's exhibit 1, drawn by this witness at the trial, marking with a red "X" the point where the high or cut bank of old channel levels off to the valley terrain. Mr. Forrest further testified to an identity of survey lines with actual river meanders as follows: "Q. Now, using the sketch that you drew here, would you indicate where the meander line that would (was) run in the 1926 survey, of which you have testified you are familiar—where that meander line was placed with regard to the banks and bed of the stream, with respect to the typical cross section which is State's Exhibit No. 1. Indicate that with a red 'X' on each side. A. *The relationship be-*

*tween the meander line,* which I shall mark on this, *is generally the same as the place where the high bank breaks off into the channel section of the river.* (Emphasis ours.) And the purpose of the meander line was to outline in general the point where the high bank of the channel leveled off with the valley floor of the Trinity River valley. So the points you see marked in red 'X' on this exhibit refer to the relative difference in elevation, rather than specifically whether it was at that point or whether 1 foot or 5 feet one way or the other."

It was in view of the above undisputed state of the record that we were persuaded to the conclusion already stated: "It is thus seen that the identified field notes of a senior survey mark the west meander line or high bank of the Trinity River channel as it stood in 1926. In effect, it replaces for all time the old bank location, thereby assuming the highest possible dignity as an artificial object or marked line."

The following statement of above opinion holding, at least inferentially, that appellee Districts were subject to the statutory bar of limitation, is unnecessary to any of the points raised by appellants and is withdrawn: That, "were it not the State of Texas the party that here asserts its title to the disputed area, appellants could safely interpose the Ten-year bar of limitation, which of course they do not urge."

Motion for rehearing, after full consideration, is in all respects overruled.