

THE ATTORNEY GENERAL

OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

September 15, 1971

Honorable James U. Cross
Executive Director
Parks and Wildlife Department
Austin, Texas   78701

Opinion No. M-953

Re: Several questions
relating to the
Canadian River bed
and regulation of
wildlife thereon by
the Parks and Wildlife
Department.

Dear Mr. Cross:

Recently you have requested an opinion of the Attorney
General regarding the ownership of the Canadian River bed and
the management of wildlife resources thereon.  You ask specif-
ically the following six (6) questions:

"1.   What constitutes state property in river
beds?

"2.   Does the cut bank as established by the
original course of the river forever sus-
tain, or does the current gradient bank
establish, the boundary between private
and state ownership?

"3.   What effect does the construction of dams
or other stream bed alterations have on
the demarcation line between state and
private property?

"4.   Assuming that a definite property line be-
tween state and private lands can be
established, would the Parks and Wildlife
Department have the authority within the
statutes to declare a moratorium on the
taking of any specie from such land?
Lacking such authority, would the Parks
and Wildlife Department be able to declare
such land as a game refuge, again assuming
that the line of demarcation could be
definitely established?

-4661-

"5.   Is the Texas Parks and Wildlife Commis-
sion authorized to adopt regulations enforc-
ing hunter safety on state-owned land,
and could those regulations be so broad as
to prohibit hunting altogether within that
context?

"6.   Does the Parks and Wildlife Department have
the authority to conduct controlled hunts
on state-owned river beds and/or railroad
rights-of-way as is presently done on state-
owned wildlife management areas with per-
mits issued on a drawing basis?"

We direct our opinion to the Canadian River and lands
riparian thereto, all of which were conveyed by the sovereign
after the adoption of the common law in Texas.

I.

We consider first your question No. 1:   "What constitutes
state property in river beds?"

In general, the waters, bed, subsurface, minerals
and wild aquatic life in all streams navigable in fact within the
State of Texas and the waters, bed, subsurface, minerals and
wild aquatic life of all river beds in the State of Texas
which are at least thirty feet in average width from their
mouth up are owned by the State of Texas, and the mineral
estate therein is dedicated to the Public Free School Fund.
Motl vs. Boyd, 116 Tex. 82, 286 S.W. 458 (1926); Maufrais vs.
State, 142 Tex. 559, 180 S.W.2d 144 (1944); State of Texas vs.
Bradford, 121 Tex. 515, 50 S.W.2d 1005 (1932); Diversion Lake
Club vs. Heath, 126 Tex. 129, 86 S.W.2d 441 (1935); Article
5302, V.C.S.; Article 5421c-3, V.C.S.

There are certain exceptions to this general rule
where surveys cross navigable streams and where the surveys
do not contain the complement of upland acres called for in
their patents or field notes.  Under such circumstances, the
acreage deficiency to the survey is made up from the river bed
under authority of Article 5414a, Vernon's Civil Statutes,
State of Texas vs. Bradford, supra.

II.

Your second question asks:   "Does the cut bank as
established by the original course of the river forever sustain,

or does the current gradient bank establish, the boundary between private and state ownership?"

Rivers inately meander.  This meandering is caused by erosion of one bank of the river with accretion resulting to the opposite bank of the river.  The State's ownership of the river bed moves with the river as the loss by erosion from one bank and gain by accretion to an opposite bank of the river changes the course and breadth of the river bed.  Manry vs. Robison, 122 Tex. 213, 56 S.W.2d 438 (1932); Hancock vs. Moore, 135 Tex. 619, 146 S.W.2d 369 (1941).

In the event of an avulsive change of course of the river, the new bed is then owned by the State of Texas and the abandoned bed becomes part of the riparian surveys. Manry vs. Robison, supra; Maufrais vs. State of Texas, supra.

### III.

Your third question is:  "What effect does the construction of dams or other stream bed alterations have on the demarcation line between state and private property?"  Our answer to this question is that such alterations have no effect on such demarcation line.

The fact that man has altered the course and flow of the navigable stream by a dam does not alter the ownership of the former river bed, as the bed existed before the alteration.  Ray vs. State, 153 S.W.2d 660 (Tex.Civ.App. 1942, error ref. w.o.m.); City and County of Dallas Levy No. 1 District vs. Carroll, 263 S.W.2d 307, (Tex.Civ.App. 1953, error ref., n.r.e.); Wilemon vs. City and County of Dallas Levy No. 1 District, 264 S.W.2d 543 (Tex.Civ.App. 1953, error ref., n.r.e.).

### IV.

We now consider your fourth question:  "Assuming that a definite property line between state and private lands can be established, would the Parks and Wildlife Department have the authority within the statutes to declare a moratorium on the taking of any specie from such land?  Lacking such authority, would the Parks and Wildlife Department be able to declare such land as a game refuge, again assuming that the line of demarcation could be definitely established?"

The Parks and Wildlife Department has only such authority as is granted to it by statute or is reasonably necessary

to effectuate the statutory grant of authority specifically given. The Parks and Wildlife Department as such has no specific authority over state-owned lands other than aquatic life in river beds. Generally speaking, its authority over state lands would be no different than its delegated authority to control game and wildlife on privately owned land. The Parks and Wildlife Department's authority to declare a moratorium on the taking of any specie of game from state land must be based on a purely game conservation concept and not on the fact that the land in question is state-owned. Again, a search of the Texas statutes fails to reveal the existence of any law authorizing the Parks and Wildlife Department to declare state lands to be a game refuge. The only state-owned lands which the Parks and Wildlife Department might declare a game refuge are state-owned lands dedicated to the use of the Parks and Wildlife Department.

## V.

Your question No. 5, asking whether the Texas Parks and Wildlife Commission is authorized to adopt regulations enforcing hunter safety on state-owned land, and whether those regulations could be so broad as to prohibit hunting altogether within that context, requires a negative answer.

A search of the Texas statutes relating to the Texas Parks and Wildlife Department and hunting do not reveal any authority for the Parks and Wildlife Commission to adopt hunter safety rules and regulations that would be so broad as to prohibit hunting altogether on state land.

## VI.

We likewise have concluded that your sixth question, whether the Parks and Wildlife Department has the authority to conduct controlled hunts on state-owned river beds and/or railroad rights-of-way as is presently done on state-owned wildlife management areas with permits issued on a drawing basis, must be answered in the negative. A search of the Texas statutes fails to reveal any authority for the Parks and Wildlife Department to conduct controlled hunts on state-owned river beds or on railroad rights-of-way. In the absence of such a statutory grant of authority, the Parks and Wildlife Department could not legally do this.

### SUMMARY

1. In general, the State is the owner in trust for the people of Texas of the water, bed, subsurface, minerals, and wild aquatic life in

the rivers of Texas that are navigable by statute and also that are navigable in fact.

2.    The State's ownership of the river bed moves with the meandering of the river which is brought about by erosion from and accretion to the banks of the stream.

The State's ownership of the river bed also follows avulsive changes in the course of the river.

3.    Man-made changes in the course of the river caused by the building of a dam thereon do not affect the State's ownership of the former river bed.

4.    The Parks and Wildlife Department does not have authority to declare a moratorium on the taking of wild game specie from state-owned river beds just because the bed is state-owned.  Any moratorium must be based on valid conservation principles.

5.    The Parks and Wildlife Commission is not authorized to adopt hunter safety regulations for state-owned river beds or other state land.

6.    The Parks and Wildlife Department does not have authority to conduct controlled hunts on state-owned river beds or railroad rights-of-way as is presently done on wildlife management areas.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by J. Milton Richardson
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
Joseph Sharpley
Dick Chote
Linward Shivers
Ben Harrison

SAM McDANIEL
Acting Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant