**Opinion issued May 9, 2023**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

### NO. 01-22-00628-CV

———————————

### CITY OF WEBSTER, Appellant

### V.

### THE MOTO KOBAYASHI TRUST AND MITSUTARO KOBAYASHI WESTSIDE PROPERTIES, LP, Appellees

---

### On Appeal from the 152nd District Court
### Harris County, Texas
### Trial Court Case No. 2019-36189

---

## O P I N I O N

The City of Webster appeals the denial of its plea to the jurisdiction.[1] The

Moto Kobayashi Trust and Mitsutaro Kobayashi Westside Properties, LP alleged in

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

a Harris County district court that the City's ordinance, requiring the removal or demolition of their properties as a public nuisance abatement measure, is illegal and effectively an unconstitutional taking. The City contends the district court erred by refusing to dismiss the constitutional inverse condemnation claim because the district courts lack jurisdiction over such claims in Harris County. We agree, and have held, that Government Code section 25.1032(c) confers exclusive jurisdiction upon the Harris County civil courts at law over constitutional inverse condemnation claims. *See San Jacinto River Auth. v. Burney*, 570 S.W.3d 820, 828–29 (Tex. App.—Houston [1st Dist.] 2018), *aff'd sub nom, San Jacinto River Auth. v. Medina*, 627 S.W.3d 618 (Tex. 2021).

The parties dispute, however, whether the public-nuisance-abatement statute, Local Government Code section 214.001, as interpreted by the Texas Supreme Court, creates an independent, statutory takings claim within the district court's jurisdiction, which the property owners have asserted or could assert through repleading. We agree with the City that it does not.

We reverse the district court's order denying the City's plea to the jurisdiction, and we render judgment dismissing the inverse condemnation claim without prejudice to its refiling in the county civil courts at law.

## Background

The Moto Kobayashi Trust and Mitsutaro Kobayashi Westside Properties, LP ("Owners") own three unoccupied, commercial buildings in the City of Webster. After an inspection, the City's chief building official notified Owners that the buildings have "structural issues," are "unsafe" and "a threat to human life, safety[,] and health," and pose a "safety and security risk" because unauthorized people could access them.

The building official referred the matter to the Building Board of Adjustment, which conducted a hearing and recommended to the City that the buildings be repaired or demolished because they were unsafe and structurally deficient.

The City conducted a public hearing on the board's recommendation. Relevant here, Local Government Code section 214.001 authorizes the City to enact ordinances requiring, among other things, the repair, removal, or demolition of buildings that are "dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety, and welfare" or "boarded up, fenced, or otherwise secured" in a manner that inadequately prevents unauthorized entry or use of the building by "vagrants or other uninvited persons as a place of harborage" or by children. *See* TEX. LOC. GOV'T CODE § 214.001(a)(1)–(3).

After the hearing, the City approved an ordinance declaring that the buildings were "dangerous, structurally deficient[,] and pose[d] a threat to human life, safety,

3

and health." In addition, the City found that the buildings did not comply with applicable building and property maintenance codes. The ordinance ordered the demolition or removal of the buildings, with no option for repair, within 45 days. Or else, the City would do so.

Owners appealed to the Harris County district court under Local Government Code section 214.0012.[2] *See id.* § 214.0012(a) (property owner "aggrieved by an order of a municipality issued under Section 214.001 may file in district court a verified petition setting forth that the decision is illegal, in whole or in part, and specifying the grounds of the illegality."). Their petition alleged that the ordinance was illegal for several reasons, including vagueness, procedural errors, and insufficient evidence, and they sought a judgment declaring the ordinance unenforceable.

Owners also pleaded an inverse condemnation claim, alleging that the forced demolition of their property under section 214.001 violated the Texas Constitution's Takings Clause, and requested damages. *See* TEX. CONST. art. I, § 17 ("No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person[.]").

---

[2] When a petition is filed under Local Government Code section 214.0012, the district court may issue a writ of certiorari directing the municipality to review its ordinance. TEX. LOC. GOV'T CODE § 214.0012(b). But the issuance of a writ does not stay proceedings on the decision from which the appeal is taken. *Id.* 214.0012(e). Here, the City agreed not to demolish the buildings during the litigation.

4

Whether their pleading alleged only constitutional inverse condemnation or also a statutory taking is disputed. According to Owners, because the claim arose from section 214.001's operation, their petition should be construed to include, or could be amended to include, an independent takings claim under that statute.

The City filed a plea to the jurisdiction, arguing that the district court lacked jurisdiction over the inverse condemnation claim because, under Government Code section 25.1032(c), county civil courts at law have exclusive jurisdiction over such claims.[3] *See* TEX. GOV'T CODE § 25.1032(c) ("A county civil court at law has exclusive jurisdiction in Harris County of eminent domain proceedings, both statutory and inverse, if the amount in controversy in a statutory proceeding does not exceed the amount provided by Section 25.0003(c) in civil cases.").

The district court denied the City's plea.

**Standards of Review**

Subject matter jurisdiction is essential to a court's authority to decide a case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A plea questioning the trial court's jurisdiction raises a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We focus first on the plaintiff's petition to determine whether the facts pleaded show that jurisdiction exists. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Tex.*

---

[3] The City did not challenge the trial court's jurisdiction over Owners' other claims.

5

*S. Univ. v. Gilford*, 277 S.W.3d 65, 68 (Tex. App.—Houston [1st Dist.] 2009, pet.

denied). We construe the pleadings liberally, look to the plaintiff's intent, and accept

the plaintiff's factual allegations as true. *See Miranda*, 133 S.W.3d at 226–27;

*Gilford*, 277 S.W.3d at 68. If the pleadings cannot establish jurisdiction but do not

show an incurable defect, the plaintiff should be allowed to replead. *State v. Holland*,

221 S.W.3d 639, 643 (Tex. 2007); *Miranda*, 133 S.W.3d at 226. But if the pleadings

affirmatively negate the trial court's jurisdiction, a claim may be dismissed without

the opportunity for repleading. *Miranda*, 133 S.W.3d at 227.

The jurisdictional question here turns on the construction of two statutes,

which is also a question of law subject to de novo review. *See TIC Energy & Chem.,*

*Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016). Our primary objective in statutory

interpretation is to give effect to the legislature's intent. *See TGS-NOPEC*

*Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011); *see also* TEX. GOV'T

CODE § 312.005. We identify that intent by looking first to the statute's plain

language. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per

curiam). A statute's clear and unambiguous language determines legislative intent.

*See TIC Energy & Chem.*, 498 S.W.3d at 74–75. We presume that the legislature

purposefully chose which words to include in the statute and which to omit. *See*

*Lippincott*, 462 S.W.3d at 509. We give a statute's undefined terms their plain and

ordinary meaning, and we construe the statute in a way that avoids rendering any

word or provision meaningless. *See Hous. Belt & Terminal Ry. Co. v. City of Hous.*, 487 S.W.3d 154, 164 (Tex. 2016). We do not consider statutory provisions in isolation but read the statute as a whole. *See In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 701 (Tex. 2015) (orig. proceeding).

Sometimes, statutes appear to conflict. If a general provision conflicts with a specific or local provision, we will construe them to give effect to both, if possible. TEX. GOV'T CODE § 311.026(a). But if the general provision and the specific or local provision cannot be reconciled, "the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail." *Id.* § 311.026(b).

## Jurisdiction in Harris County

The City argues that the district court lacks jurisdiction over Owners' inverse condemnation claim because Government Code section 25.1032(c) gives the Harris County civil courts at law exclusive jurisdiction of such claims.

An inverse condemnation action is a constitutional claim in which a property owner asserts that a governmental entity intentionally performed acts that resulted in a "taking" of property for public use, without formally condemning the property, and require compensation. *San Jacinto River Auth. v. Ogletree*, 594 S.W.3d 833, 839 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Sometimes called a "takings claim," it is a type of eminent domain proceeding. *Id.* Generally, Texas district courts

and county civil courts at law have concurrent jurisdiction in eminent domain cases, including inverse condemnation actions. *See* TEX. PROP. CODE § 21.001. Harris County is an exception. In Harris County, Government Code section 25.1032(c) governs jurisdiction over eminent domain proceedings:

> A county civil court at law has exclusive jurisdiction in Harris County of eminent domain proceedings, both statutory and inverse, if the amount in controversy in a statutory proceeding does not exceed the amount provided by Section 25.0003(c) in civil cases. Notwithstanding Section 21.013, Property Code, a party initiating a condemnation proceeding in Harris County may file a petition with the district clerk when the amount in controversy exceeds the amount provided by Section 25.0003(c). The amount in controversy is the amount of the bona fide offer made by the entity with eminent domain authority to acquire the property from the property owner voluntarily.[4]

TEX. GOV'T CODE § 25.1032(c).

Both Houston courts of appeals have determined that, under section 25.1032(c), county civil courts at law have exclusive jurisdiction over constitutional inverse condemnation claims in Harris County.[5] *See Ogletree*, 594 S.W.3d at 839; *Burney*, 570 S.W.3d at 826–28; *see also Taub v. Aquila Sw. Pipeline Corp.*, 93

---

[4] The monetary limit on the exclusivity of the county civil court at law's jurisdiction is not at issue here because it applies only in statutory condemnation proceedings in which the condemnor's bona fide offer exceeds the amount in section 25.0003(c). *See Burney*, 570 S.W.3d at 828.

[5] Docket control concerns appear to be the basis for this unique jurisdictional scheme. *See Taub v. Aquila Sw. Pipeline Corp.*, 93 S.W.3d 451, 457–58 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (discussing legislative history and noting intention to alleviate district court backlog).

S.W.3d 451, 457 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding Property Code's general grant of concurrent jurisdiction "must yield to [section 25.1032(c)'s] specific grant of 'exclusive jurisdiction' over 'eminent domain proceedings, both statutory and inverse'").

For instance, in *Burney*, property owners whose homes flooded during Hurricane Harvey sued the San Jacinto River Authority in Harris County district court, alleging both constitutional inverse condemnation claims and statutory takings claims under Government Code chapter 2007. 570 S.W.3d at 825. Chapter 2007 expressly authorizes a property owner to bring suit "to determine whether the governmental action of a political subdivision results in a taking under [that] chapter" and instructs that such suits must be brought "in a district court in the county in which the private real property owner's affected property is located."[6] TEX. GOV'T CODE § 2007.021(a). If a chapter 2007 claimant prevails, the governmental action resulting in the taking is invalidated. *Id.* § 2007.023(b).

This Court held in *Burney* that the district court lacked jurisdiction over the constitutional inverse condemnation claims under Government Code section 25.1032(c) but had jurisdiction over the chapter 2007 statutory takings claim. *Burney*, 570 S.W.3d at 824–29. So the Court dismissed the constitutional inverse

---

[6]  Chapter 2007 does not apply to an action by a municipality, with one exception for the disparate exercise of functions in areas of extraterritorial jurisdiction. *See* TEX. GOV'T CODE § 2007.003(a)(1), (b)(1). That exception is not at issue here.

condemnation claim without prejudice to its refiling in the Harris County civil courts at law. *Id.* at 838–39. And it affirmed the denial of the River Authority's motion to dismiss the chapter 2007 claim. *Id.*

Owners urge that neither Government Code section 25.1032(c) nor *Burney* compels dismissal of their inverse condemnation claim. According to Owners, there is a conflict between Government Code section 25.1032(c) and Local Government Code section 214.0012 in which the latter should prevail. The conflict exists, they say, because the Texas Supreme Court has interpreted Local Government Code section 214.001 as requiring an inverse condemnation claim to be brought in the same proceeding as the appeal from a municipality's nuisance-abatement action and, under section 214.0012, such appeals may be brought only in district court.

We find nothing in Local Government Code sections 214.001 or 214.0012(a) that conflicts with Government Code section 25.1032(c). Neither section 214.001 nor 214.0012(a) contains Owners' "same proceeding" requirement. *See generally State ex rel. Best v. Harper*, 562 S.W.3d 1, 10 (Tex. 2018) (rejecting claim that statutes conflicted when there was no provision "in either statute that [could not] be applied alongside those in the other statute"); *Bell v. Katy Indep. Sch. Dist.*, 994 S.W.2d 862, 865 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("An appellate court reviews an act as a whole. It does not give a statute meaning that conflicts with other provisions if it can reasonably harmonize the provisions.").

10

Section 214.001 authorizes municipalities to abate public nuisances—here, the buildings found to be dilapidated, substandard, and inadequately secure. *See* TEX. LOC. GOV'T CODE § 214.001(a). Under section 214.0012(a), a property owner aggrieved by a municipality's abatement order "may file in district court a verified petition setting forth that the decision is illegal, in whole or in part, and specifying the grounds of the illegality." *Id.* § 214.0012(a). And the district court "may reverse or affirm, in whole or in part, or may modify the decision brought up for review." *Id.* § 214.0012(f). But neither provision references takings claims of any type. *See id.* Nor does any other provision for abatement of dangerous structures under this chapter. *See also id.* §§ 214.001–.005.

Instead, Owners' contention rests on Texas Supreme Court authority addressing the relationship between appeals of section 214.001 nuisance determinations and resultant unconstitutional takings claims. *See City of Beaumont v. Como*, 381 S.W.3d 538, 540 (Tex. 2012) (per curiam); *Patel v. City of Everman*, 361 S.W.3d 600, 601 (Tex. 2012) (per curiam); *City of Dall. v. Stewart*, 361 S.W.3d 562, 579 (Tex. 2012). In *Stewart*, the Court held that a nuisance determination by the Dallas Urban Rehabilitation Standards Board, an administrative body that enforces municipal zoning ordinances, was not entitled to preclusive effect in the property owner's takings suit. *See Stewart*, 361 S.W.3d at 580–81. Because the

11

takings claim was constitutional, it had to be decided by a court rather than an agency. *Id.* at 568.

On rehearing, the city and "a number of amici" expressed concern that failing to accord administrative nuisance determinations preclusive effect would open the floodgates for takings claims, which have a ten-year statute of limitations. The city and amici argued that "parties will now sue to challenge demolitions that occurred any time in the past ten years," and that the Court's decision would "effectively eliminate[] administrative nuisance abatement because cities lack the resources to file suit to abate every nuisance." *Id.* at 579. The Court responded that these arguments overlooked key facts:

> First, takings claims must be asserted on appeal from the administrative nuisance determination. Although agencies have no power to preempt a court's constitutional construction, a party asserting a taking must first exhaust its administrative remedies and comply with jurisdictional prerequisites for suit. We recently explained that a litigant must avail itself of statutory remedies that may moot its takings claim, rather than directly institute a separate proceeding asserting such a claim.

> Thus, . . . even though [a constitutional] claim may be asserted for the first time in the district court upon appeal of the agency order, a failure to comply with the appeal deadlines and/or the failure to so assert the constitutional claim at that time, precludes a party from raising the issue in a separate proceeding. A party cannot attack collaterally what she chooses not to challenge directly. Cities are not, therefore, subject to new takings suits for long-concluded nuisance abatements.

*Id.* (internal citations and quotation omitted).

12

Then, in *Patel*, the Court held "that a party asserting [an unconstitutional] taking based on an allegedly improper administrative nuisance determination must appeal that determination and assert his takings claim in that proceeding." *Patel*, 361 S.W.3d at 601. Applying *Stewart*, the Court noted that, although "Patel appealed the administrative nuisance determination" to a forum "proper . . . for litigating his takings claim," because "he nonsuited the case[,] Patel cannot attack collaterally what he declined to challenge directly." *Id.* at 601–02 (further observing "that a failure to assert a constitutional claim on appeal from an administrative determination precludes a party from raising the issue in another proceeding" (citation omitted)).

Finally, in *Como*, the property owner failed to directly appeal the city's administrative determination that a building was in disrepair and could be demolished unless it was repaired. *Como*, 381 S.W.3d at 539. She sued the city after the building was demolished and, in her post-demolition suit, alleged a takings claim under the Texas Constitution. *Id.* In rendering judgment against her, the Court held that because she "could have, but did not, avail herself of her right to challenge the City's decision, . . . her takings claims [were] barred, and the trial court correctly dismissed them." *Id.* at 539–40 (internal quotations omitted).

Owners read these cases to hold that a constitutional inverse condemnation claim is "an inherent element within the [Local Government Code section] 214.001

13

administrative appeal proceeding" and must be raised in that appeal or else it is waived. In addition, they say the Texas Supreme Court's interpretation of section 214.001 creates an independent, statutory takings claim that survives dismissal, like the chapter 2007 claim in *Burney*, which they have already pleaded or should be allowed to plead. We disagree.

These cases do not recognize or create any independent, statutory takings claim. Nor do they abrogate the exclusive jurisdiction of the Harris County civil courts at law over inverse condemnation claims. The unique jurisdictional scheme in section 25.1032(c) was not at issue because none of the cases concerned property in Harris County. *See Como*, 381 S.W.3d at 538 (Jefferson County); *Patel*, 361 S.W.3d at 600 (Tarrant County); *Stewart*, 361 S.W.3d at 562 (Dallas County). Therefore, *Stewart* and the cases applying it do not create an exception to the plain language of that statute. *See, e.g.*, *Cox v. Dall. Levee Improvement Dist.*, 258 S.W.2d 851, 858 (Tex. App.—Dallas 1953, writ ref'd n.r.e.) ("A decision cannot be stare decisis of an issue which was not presented to or passed upon in the case, cited as controlling, even though it involves the same subject matter."); *Eubanks v. State*, 203 S.W.2d 339, 342 (Tex. App.—Austin 1947, writ ref'd n.r.e.) ("[T]he issue here involved was not raised in that case, not presented to the court, and not passed upon by the court. Hence that decision could not be stare decisis of the question here presented."). Instead, these cases reflect the Texas Supreme Court's concern for

14

errant takings suits—that is, unconstitutional takings claims brought collaterally without proper administrative exhaustion and direct appeal (and possibly well after the related abatement). That concern is not implicated here because Owners have appealed the City's ordinance.

As is its prerogative, the legislature has mandated that inverse condemnation claims in Harris County must be brought in the civil courts at law. *See* TEX. GOV'T CODE § 25.1032(c); *see also* TEX. CONST. art. V, § 1 ("The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto."). The plain language of section 25.1032(c) and our own precedent in *Burney* compel use to conclude that the district court lacks jurisdiction over Owners' inverse condemnation claim. Because the authorities cited by Owners do not recognize any independent, statutory takings claim under Local Government Code section 214.001, Owners are not entitled to amend their pleadings to allege such a claim. *See Miranda*, 133 S.W.3d at 227. We therefore hold that the district court erred by refusing to dismiss the inverse condemnation claim.

We recognize our holding requires piecemeal litigation for Harris County property owners who are aggrieved by abatement orders and desire to make an inverse condemnation claim based on those orders. Piecemeal litigation is generally disfavored as inefficient and burdensome—uniquely here for Harris County property

15

owners. *See, e.g.*, *Iley v. Hughes*, 311 S.W.2d 648, 651 (Tex. 1958) ("Our courts have always frowned upon piecemeal trials, deeming the public interest, the interests of litigants and the administration of justice to be better served by rules of trial which avoid a multiplicity of suits."). While this is an odd result, we disagree with Owners that it is absurd. *See Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) (noting that "absurdity safety valve is reserved for truly exceptional cases, and mere oddity does not equal absurdity"). Section 25.1032(c) has for some time compelled piecemeal litigation in other contexts. *See, e.g.*, *Burney*, 570 S.W.3d at 838–39 (requiring one suit for statutory takings claim and second suit for constitutional takings claim arising from same facts); *City of Hous. v. Guthrie*, 332 S.W.3d 578, 592–93 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (same).

## Conclusion

For these reasons, we reverse the district court's order denying the plea to the jurisdiction as to Owners' inverse condemnation claim, and we render judgment dismissing that claim without prejudice to its refiling in the Harris County civil courts at law and without expressing any opinion on its availability or viability.

Sarah Beth Landau
Justice

Panel consists of Justices Landau, Countiss, and Guerra.

16